Nancy Jensen, Administratrix of Ole Jensen, Deceased, Plaintiff-Appellee, v. Elgin, Joliet and Eastern Railway Company, a Corporation, Defendant-Appellant.

**Gen. No. 48,184.**

First District, First Division.
May 23, 1961.
Rehearing denied June 13, 1961.

Stevenson, Conaghan, Hackbert, Rooks and Pitts, of Chicago (Harlan L. Hackbert and Robert L. Hesse, of counsel), for appellant.

Samuel E. Bublick and Meyer Z. Grant, of Chicago (Nat P. Ozmon, of counsel), for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

This is an appeal from a judgment awarding the plaintiff, Nancy Jensen, Administratrix of the Estate of Ole Jensen, deceased, $10,000 for damages under the survival provision of the Federal Employers' Liability Act (45 U.S.C. 59). The decedent, a switching foreman, sustained a back injury when he attempted to throw a puzzle switch which was in an unsafe and inoperative condition by reason of the fact that it had not been properly oiled and maintained. The issue of the defendant's liability was previously ascertained. See Jensen v. Elgin, J. & E. Ry. Co., 15 Ill.App.2d 559, 147 N.E.2d 204. An earlier judgment for $50,000 was reversed and the cause remanded for a new determination of the amount of damages. Ole Jensen died from other causes pending the former appeal, his administratrix was substituted and the complaint amended, limiting the recovery sought to damages which her decedent might or could have recovered in his lifetime for the injuries he sustained from the date of his injuries to the date of his death, for the benefit of Ole Jensen's three adult children. As Ole Jensen's three marriages terminated in divorce decrees prior to the instant litigation, the former wives are not concerned with these proceedings. Recovery is sought for the benefit of the three children, two of whom are married and living with their families. None is dependent on the father.

199

There is no controversy among the children as to their respective rights under the statute.

██ The principal question presented is whether the right of action of an injured employee under the Federal Employers' Liability Act which survives his death from other causes may be prosecuted for the benefit of his adult nondependent children. The FELA, enacted in 1908, created a right of action in the injured employee and a right of action for wrongful death in his personal representative "for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents and, if none, then of the next of kin dependent upon such employee," 45 U.S.C. Sec. 51; 35 Stat. 65, c. 149); but made no provision for survival of the injured employee's right of action in the event of his later death from his injuries or from other causes. American R.R. of Porto Rico v. Didricksen, 227 U.S. 145, 149; St. Louis, Iron Mountain & So. Ry. Co. v. Hesterly, 228 U.S. 702. The historical background of section 9 of the "survival statute," added by the amendment of April 5, 1910, is set forth in St. Louis, Iron Mountain & So. Ry. Co. v. Craft, 237 U.S. 648 at 660. Section 9 is as follows (45 USC sec 59):

"Any right of action given by this chapter to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee, and, if none, then of such employee's parents and, if none, then of the next of kin dependent upon such employee, but in such cases there shall be only one recovery for the same injury."

It will be noted that the statutory designation in section 9 of the beneficiaries of the survival action is identical with the designation in section 1 (45 U.S.C.

200

sec. 51) of the beneficiaries of the wrongful death action. By the recognized rule of statutory interpretation, identical language in different sections of the same statute must receive the same construction. The persons for whose benefit the survival action may be prosecuted are the same persons as those for whose benefit a wrongful death action may be brought. Illinois Central R. Co. v. Porter, 207 F. 311.

In 2 Roberts: Federal Liabilities of Carriers (2d ed.) Sec. 884, the author states:

"In view of the fact that the beneficiaries of the two causes of action available in case of death are described in identical language, and the construction of the statute by the Supreme Court in the Craft case, ante, as well as the further mandate of section 9 that 'in such cases there shall be only one recovery for the same injury,' no reason appears to doubt that the vesting of causes of action surviving by virtue of section 9 is to be tested and controlled by the same considerations found applicable in respect of actions for death under section 1. And under this interpretation of the statute it results that no cause of action would vest in a surviving relative of an employee dying after sustaining injury under conditions giving him a right of action under section 1, unless such relative was a dependent of such employee, notwithstanding the recovery which might be had in such a case would not be measured by that relative's pecuniary loss by reason of the death, but rather by the loss and suffering of the employee himself, prior to his death, as a result of his injury."

In Gulf, C. & S. F. Ry. Co. v. McGinnis, 228 U.S. 173, the court held that an instruction which permitted recovery on behalf of a married daughter was reversible error. In Michigan C. R. Co. v. Vreeland, 227 U.S. 59, the court pointed out the special kind of damage which a minor child sustains from the death of a parent. See

also Chicago, B. & Q. Ry. Co. v. Kelley, 74 F.2d 80; Thompson v. Camp, 163 F.2d 396; Teeters v. Pennsylvania R. Co., 118 F. Supp. 385. In Stark v. Chicago North Shore & M. R. Co., 203 F.2d 786, the court held that a minor child's share in the proceeds of a settlement of judgment in a FELA wrongful death action is similarly limited to his minority. See In re Backus' Estate, 73 Ohio App. 262; 55 N.E.2d 811; Williams v. Southern Pacific Co., 202 Pac. 356; Hines v. Walker, 225 S.W. 837.

■ ■ Plaintiff maintains that pecuniary loss to children or dependency of children is not a prerequisite to the vesting of a survival action under Sec. 9 of the FELA. She says that this section remedied the oversight in Sec. 1 and that damages under Sec. 9 are not measured by pecuniary loss to the specific beneficiaries but by those damage elements which accrued to the decedent during his lifetime. She insists that pecuniary loss to the next of kin is not necessary where the action is based on the surviving right of action of a deceased employee and that in Hopps' Estate v. Chestnut, 324 Mich. 256, it was held that a survival action could be brought for the benefit of adult children without the showing of pecuniary loss or dependency. In that case there was a widow for whose benefit the action clearly survived under the statute. Two adult daughters of the decedent by a former marriage sought to share in the proceeds of the action and in an action to which only the widow and daughters were parties the court permitted this in accordance with the Michigan statute of descent and distribution. This was erroneous as the distribution of the proceeds of an FELA action is governed by federal law. Taylor, Adm. v. Taylor, 232 U.S. 363; In re Backus' Estate, 73 Ohio App. 262. The Michigan court held that these children were in a class of beneficiary entitled to share in a survival action irrespective of whether they were de-

pendent upon the deceased for support or maintenance. The court did not consider at all the construction of the phrase "children of such employee" as being limited to minor children, but only the significance of dependency. In our opinion the decisions of the federal courts that under the FELA "children" means "children" during their minority, are persuasive and should be followed.

We are of the opinion that the same construction given by the courts to the meaning of Sec. 1 must be given to the phrase "children of such employee" in Sec. 9. No different legislative purpose can be discerned as the language is identical. No sound reason can be suggested why adult children should be permitted to share in the recovery for their parent's pain and suffering but not in the proceeds of a wrongful death action. The McGinnis case (228 U.S. 173) holds that a wrongful death action may not be prosecuted for the benefit of an adult, married daughter, (p. 174) not "in any way dependent upon the decedent." One cannot find any congressional purpose to include nondependent sons and daughters as beneficaries of a survival action when their father dies of other causes and exclude them when his death is the result of the defendant's negligence. Plaintiff, citing Black's Law Dictionary, says that the term "child" as used in the law when speaking of a decedent means a son or daughter of a parent irrespective of age. It is obvious that if "children" under Sec. 1, the wrongful death section, means children during their minority, it means the same under Sec. 9, irrespective of any dictionary definition. Neither the 26-year-old married son living with his family in Florida, nor the 33-year-old daughter living in Bellwood, sustained any loss as a result of their father's accident. Nancy, the administratrix, 23 years old, neither alleged nor proved any dependency on her father and the offer of proof was that her father had

203

not supported her since she was 18. Since under the McGinnis case no judgment on their behalf could have been recovered if their father died as a result of defendant's negligence, they are not in a position to ask for a judgment in their favor when their father died of other causes.

For these reasons the judgment is reversed and the cause is remanded with directions to enter judgment against the plaintiff.

Judgment reversed and cause remanded with directions.

FRIEND, J., concurs.

BRYANT, J., dissenting:

The decedent, Ole Jensen, was injured on August 8, 1954. He filed an action for personal injuries under section 1 of the FELA (45 U.S.C. 51) and obtained a judgment for $50,000, which was entered on April 3, 1956. On August 23, 1956, Ole Jensen died from other causes. The case was appealed to this court and that judgment was reversed because of a faulty instruction on the subject of damages and the cause remanded for a new determination of the amount of damages. 15 Ill. App.2d 559. The plaintiff, Nancy Jensen, Administratrix, was substituted and the original complaint amended, limiting the recovery sought to damages which her decedent might or could have recovered in his life-time for the injuries he sustained from the date of his injuries to the date of his death. Recovery is sought under section 9 of the FELA (45 U.S.C. 59) for the benefit of Ole Jensen's three children. Judgment was entered on February 19, 1960, on the verdict of the jury, for $10,000 and costs, in favor of the plaintiff and this appeal followed.

The primary question on this appeal is whether the decedent's cause of action for his personal injuries survives under section 9 of the FELA (45 U.S.C. 59).

The majority opinion holds that it does not. This position is based on the premise that the "survival statute" should receive the same construction as the "wrongful death" provision in regard to the prerequisites for the vesting of the cause of action. I disagree with this basic premise.

Section 1 of the Act (45 U.S.C. 51) provides that an interstate carrier:

> "shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment."

The Federal Employers' Liability Act creates two distinct federal rights of action: (1) for pecuniary loss of support occasioned by the death of the employee; and (2) for the employee's personal injuries. These rights are enforceable by the employee's personal representative for the exclusive benefit of three specified classes of beneficiaries: (1) the surviving widow or husband and children of such employee; and, if none, then (2) of such employee's parents; and, if none, then (3) of the next of kin dependent upon such employee.

The original act made no provision for the survival of the right of action given to the injured employee and since the federal law superseded all state statutes dealing with the liability of interstate carriers, the deceased's cause of action for personal injuries died with him and the measure of recovery under section 1 was limited to the actual pecuniary loss suffered by the appropriate class of beneficiaries. Fulgham v. Midland Valley R.R., 167 F. 660; Walsh v. New York, N. H. & H. R. R., 173 F. 494. In the Walsh case, supra, Circuit Judge Lowell concluded that the cause of action did not survive and stated that "this result has been reached with reluctance." . . . "The survival of the cause of action in this case is allowed by the statutes of many States. That one who has suffered in body and in purse by the fault of another, and so has a cause of action against the wrongdoer, should, as to his own estate, be deprived of this remedy by the delays of the law, or without such delay, by his death, before or after action brought, whether connected or unconnected with his first injury, seems to me, as to Sir Frederick Pollock, a barbarous rule. The intent or the oversight of the legislature has established the rule in this case." ibid., 496.

Following these two decisions, a survival provision was proposed in Congress to rectify the defect in section 1. "In reporting upon it the Committees on the Judiciary in the Senate and House of Representatives referred at length to the opinions delivered in the two cases, to the absence from the original act of a provision for a survival of the employee's right of action and to the presence of such a provision in the statutes of many of the States, and then recommended the adoption of the amendment, saying that the act should be made 'as broad, as comprehensive, and as inclusive in its terms as any of the similar remedial statutes exist-

ing in any of the States, which are suspended in their operation by force of the Federal legislation upon the subject.' Senate Report No. 432, 61st Cong., 2d Sess., pp. 12–15; House Report No. 513, 61st Cong., 2d Sess., pp. 3–6. While these reports cannot be taken as giving to the new section a meaning not fairly within its words, they persuasively show that it should not be narrowly or restrictively interpreted." St. Louis, Iron Mountain & So. Ry. Co. v. Craft, 237 US 648, 661.

Section 9 provides that:

> "Any right of action given by this chapter to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee, and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, but in such cases there shall be only one recovery for the same injury."

Neither sections of the Act require a showing of dependency for the first two classes of beneficiaries. Grammatically construed, the word "dependent" refers only to the "next of kin". However, under section 1 (the wrongful death provision), the theory of recovery requires a showing of actual pecuniary loss and recovery is limited to the actual pecuniary loss which the beneficiaries suffered by virtue of the deceased's wrongful death.

The United States Supreme Court in the Craft case, supra, interpreted the two provisions (sections 1 and 9) as allowing the personal representative to recover on behalf of the designated beneficiaries "not only such damages as will compensate them for their own pecuniary loss, but also such damages as will be reasonably compensatory for the loss and suffering of the injured person while he lived. Although originating in

the same wrongful act or neglect, the two claims are quite distinct, no part of either being embraced in the other. One is for the wrong to the injured person and is confined to his personal loss and suffering before he died, while the other is for the wrong to the beneficiaries and is confined to their pecuniary loss through his death. One begins where the other ends, and a recovery upon both in the same action is not a double recovery for a single wrong, but a single recovery for a double wrong." 237 U. S. 648, 657–8.

In Berg v. Atlantic Coast Line R. Co., 93 S.E. 390, 391, an action for wrongful death under section 1 was brought for the benefit of the deceased's parents, beneficiaries under the second class. The court said that "the sole question is whether it is necessary for plaintiff to allege and prove that the father and mother were dependent upon the son for support. Upon consideration of the act itself and the decisions of the Supreme Court construing it, that question is answered in the negative." Garrett v. Louisville & Nashville Ry. Co., 235 U.S. 308; Minneapolis & St. Louis Ry. Co. v. Gotschall, 244 U.S. 66. The court noted that the cases did not require an allegation of dependency in a wrongful death action for the first two classes of beneficiaries but only pecuniary loss.

Section 9 of the Act proceeds under a different theory. This is based on the wrong to the injured person and is confined to his personal loss and suffering before he died. Cases cited under section 1 of the Act, the wrongful death provision, which involve the question of the "actual pecuniary loss" sustained by the beneficiary are not relevant to a determination of the prerequisites for the vesting of a cause of action under section 9.

The majority view adopts the rigid rule of statutory construction that the "identical language in different sections of the same statute must receive the same con-

struction." This is not an inflexible rule. "It is not a sound proposition that the same word occurring in different places in the same statute always means the same thing; the same word may have different meanings in different parts of the same statute, or even in the same section. This result may be reached where the subject matter to which the identical words refer is not the same in the several places, or where the conditions are different, or where the scope of legislative power exercised in one case is broader than that exercised in another. Even the presumption that identical words used in different parts of the same statute are intended to have the same meaning is not rigid, and readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they are employed in different parts of the act with different intent. Indeed where the subject matter to which the word refers is not the same in both clauses, or where the surrounding circumstances are different, it has been held that the presumption must yield to an adverse presumption, furnished by an analysis of the various purposes of the law, and of the language in which those purposes are expressed." 50 Amer. Juris., section 272, p. 260. It hardly needs to be argued that the subject matter of the survival statute, the claim of the injured employee for his personal loss and suffering before he died, is quite different from the subject matter of the wrongful death action, the claim of the beneficiaries for the pecuniary loss sustained by his death.

Illinois Cent. R. Co. v. Porter, 207 F. 311, is cited for the proposition that "the persons for whose benefit the survival action may be prosecuted are the same persons as those for whose benefit a wrongful death action may be brought." However, in that case, the court explicitly pointed out that the 1910 amendment (the survival statute) was not under consideration. "It is

true that previous to that amendment [the survival statute] recovery was limited to compensating such relatives as are shown to have sustained pecuniary loss by the death . . . and that the apportionment of damages should be made by the jury . . . and we have held in such cases that where parents or next of kin are beneficiaries it is necessary that the declaration contain an averment of pecuniary loss . . . . Yet, whatever may be the effect of the amendment of 1910 (a question we are not called upon to consider, in view of the theory on which the case was tried below and the fact that no error is assigned upon the instruction as to the measure of damages) and assuming, for the purposes only of this opinion, that the rules above stated would apply to the surviving right of action of deceased, we think the defect urged was not fatal." 207 F. 311, 314. The court went on to say that the testimony tended to show pecuniary injury to the decedent's father (there was no surviving spouse or children) and that the recovery would be solely for the benefit of the parent, to the exclusion of the third category of beneficiaries, the next of kin of the deceased.

The majority opinion quotes the commentary in 2 Roberts: Federal Liabilities of Carriers (2d ed.) section 884, for the proposition that no cause of action would vest in the children of the deceased unless they were dependent upon him. Roberts cites no cases to support this contention. It is based on three points: (1) the fact that identical language is used to describe the beneficiaries in both provisions; (2) the construction of section 9 by the Supreme Court in the Craft case, supra, and (3) the limitation in section 9 that "there shall be only one recovery for the same injury." As the first two points were discussed previously, and I believe, shown to be without merit, it would be sufficient to quote from the Craft case, supra, on the last point. "Much stress is laid upon the concluding clause

210

in the new section, 'but in such cases there shall be only one recovery for the same injury'. Passing and reserving the question of its application where there has been a recovery by the decedent in his life time (see Michigan Central R.R. v. Vreeland, supra, p. 70) we think this clause, as applied to cases like the present, is not intended to restrict the personal representative to one right to the exclusion of the other, or to require that he make a choice between them, but to limit him to one recovery of damages for both, and so to avoid the needless litigation in separate actions of what would better be settled once for all in a single action." St. Louis, Iron Mountain & So. Ry. Co. v. Craft, 237 US 648, 659.

It seems quite evident that the view advanced by Roberts is not only opposed to the explicit statutory wording which does not require a showing of dependency for the first class of beneficiaries, but is likewise unsupported by public policy or reason.

The defendant's final argument in support of his contention that the cause of action died with the deceased is that the word "children" under the survival statute means "children during their minority." The argument is derived from the general language used in the cases dealing with the measure of recovery under section 1, the wrongful death provision. The phrase "children of such employee" has never been authoritatively construed to mean "children during their minority" in either section 1 or section 9. All the cases which denied recovery to adult children did so solely on the ground that in the particular case, the children failed to show any actual pecuniary loss under the wrongful death provision. In Thompson v. Camp, 163 F.2d 396, 403, an action seeking recovery under section 1, (wrongful death provision), the court said that "In the absence of evidence that an adult child is either dependent upon or had any reasonable ground for expecting any pecuniary benefit from a continuance of

211

the decedent's life, a recovery on behalf of such child is excluded." In Haidacker v. Central R. Co. of New Jersey, 52 F. Supp. 713, 715, the court said that recovery under the wrongful death provision is not limited to an infant child if in fact the child who attained the age of twenty-one suffered a pecuniary loss. "There are situations where a child who has attained the age of twenty-one years would be entitled to damages if he had in fact suffered a pecuniary loss. Such an instance would be the case of one who was not employed and who was living at home and supported by the deceased, or who was living away from home and was ill or crippled and receiving support from the deceased; other instances might be pointed out." In Southern Ry. Co. v. Lunsford, 179 S.E. 571, 573, the court held that "an action [for wrongful death] may be properly brought under the federal laws by the administratrix of the deceased employee of an interstate carrier, who was a widower, and contributed a part of his earnings to the support of his two children, one of whom is the administratrix, although neither of the children is a minor."

In Gulf, C. & A. F. Ry. Co. v. McGinnis, 228 U. S. 173, 174–5, another wrongful death proceeding, the court held that where "there was neither allegation nor evidence" that the decedent's adult married daughter "had any reasonable expectation of any pecuniary benefit as a result of a continuation of his life", an instruction which did not limit the damages to pecuniary loss sustained by the beneficiaries was reversible error. In Michigan Cent. R. R. v. Vreeland, 227 U. S. 59, the action for wrongful death was brought for the benefit of the deceased's widow. In the course of its opinion, the court discussed certain aspects of the nature of the pecuniary loss which a child sustains from the death of a parent, and noted that "care and advice" might be a proper matter for compensation for a minor child.

212

This was in the context of its consideration of an erroneous instruction, which would have allowed the jury to compensate the widow (there were no children) for the pecuniary value of the loss of the decedent's "care or advice". This case does not even purport to restrict recovery under the wrongful death act to children during their minority. In Stark v. Chicago North Shore & M. R. Co., 203 F.2d 786, 788, a case involving the distribution of the proceeds of a settlement for wrongful death to the deceased's widow and minor child, the court upheld an apportionment based on the actual pecuniary loss of the beneficiaries. Evidence in that case disclosed that the deceased never voluntarily paid anything for the child's support. The court followed the general rule that damages under the wrongful death provision "are to be gauged by the reasonable expectation of pecuniary benefits which would have resulted from the continued life of the deceased" and consequently limited the child's recovery to his prospective pecuniary losses until he reached his majority. ibid., p. 788.

It is apparent from the cases cited that none of them limit the term "children" to "children during their minority". On the contrary, there are numerous cases under the wrongful death act which would allow recovery for an adult child. The term "child" as used in its ordinary legal sense is not restricted to a minor child; it means a son or daughter of a parent irrespective of age. "Courts should be slow to impart any other than their commonly understood meaning to terms employed in the enactment of a statute, and it is the policy of the courts to avoid giving statutory phraseology a new, curious or peculiar, distorted, hidden, unusual, unnatural, strained or forced, artificial, refined, metaphysical, or subtle meaning. To the contrary, it is a general rule of statutory construction that words of a statute will be interpreted in their ordinary acceptation

213

and significance and the meaning commonly attributed to them." 50 Amer. Juris., section 238, p. 228.

In Hopps' Estate v. Chestnut, 36 N.W.2d 908, the Supreme Court of Michigan allowed a decedent's two adult children to share in the proceeds of a settlement with his widow, under section 9 of the Act. The court permitted this in accordance with the Michigan statute of descent and distribution, as the federal statute is silent as to the mode of distribution of the proceeds of a survival action where there is an apportionment to be made among beneficiaries of the vesting class. The widow and the two children, of course, come within the first mutually exclusive class of beneficiaries. Taylor, Adm. v. Taylor, 232 U. S. 363, cited by the majority opinion, is not in point. In that case, the court held that the parent of the deceased was not entitled to recover where there was a surviving spouse. This merely reaffirmed the familiar rule that the classes of beneficiaries were mutually exclusive and that no cause of action would vest in the members of the second class where the decedent left surviving him members of the first class.

In the instant case, there is no conflict among the beneficiaries and the children would presumably share equally in the proceeds of the survival action.

In re Backus' Estate, supra, cited by the majority opinion, involves a proceeding for an order of distribution of a sum received in settlement of a claim obtained under section 1, the wrongful death provision. The court correctly stated the rule that the decedent's two adult sons were not entitled to participate in the settlement with the surviving spouse since they had no reasonable expectation of any pecuniary benefit from the continuation of the decedent's life.

It is clear that this cause of action for personal injuries would not abate on the death of the decedent if the claim were governed by state law. Ch. 3, Sec. 494,

Smith-Hurd Ill. Ann. Stat.; Wetherell et al., Exrs., v. Chicago City R. R. Co., 104 Ill. App. 357, 361. The manifest intention of Congress in passing the survival statute was to make it as comprehensive as the existing state survival statutes. The reports of the proceedings to the enactment of the survival statute "persuasively show that it should not be narrowly or restrictively interpreted." St. Louis, Iron Mountain & So. Ry. Co. v. Craft, 237 US 648, 661. The act was designed to repudiate the "barbarous rule" that "one who has suffered in body and in purse by the fault of another, and so has a cause of action against the wrongdoer, should, as to his own estate, be deprived of this remedy by the delays of the law, or without such delay, by his death, before or after action brought, whether connected or unconnected with his first injury." Senate Report No 432, 61st Cong 2d Sess 15. The act was designed in part to deter railroad negligence (72 Harvard L R 558, 560; Senate Report No 432, supra, 2.). The rigid construction of the statute adopted by the majority opinion would absolve the railroad from liability for its negligence and put a premium on further delays in litigating these types of cases. Such a result is not required by the wording of the statute or any decision in the courts. It is contrary to the expressed intention of Congress and is not a desirable rule from the standpoint of social policy. Accordingly, I would hold that the decedent's adult, non-dependent children are qualified to take as beneficiaries under the survival statute.

The defendant's second major contention is that the trial court committed reversible error in permitting irrelevant and incompetent medical testimony. The defendant takes particular objection to the testimony of Dr. Spiegel, on the theory that he was not a treating physician and that the testimony was elicited solely for the purposes of testifying at the trial.

The decedent first consulted a Dr. Willard Shabat in August 1954 and saw him at least twice a month from that time until June 7, 1955. He examined him and sent him to Dr. Zeitlin for X-rays. Dr. Shabat ordered a brace for his back, gave him pills to relieve his pain and had him use a heat pad on his back and a bed board. Thereafter, the decedent contacted Dr. Spiegel, apparently in his capacity as a "consultant". Dr. Spiegel examined him and told Dr. Shabat what course of treatment to follow. Dr. Shabat did not testify at the trial as he died sometime prior to October 1955.

The question of the admissibility of Dr. Spiegel's testimony was not decided in our earlier opinion. Jensen v. Elgin, J. & E. Ry., 15 Ill.App.2d 559, 560-n, 147 N.E.2d 204. We there intimated that his testimony approached the borderline of inadmissibility, although it was acknowledged that he did prescribe some treatment for the deceased and gave him pills to reduce his pain. While it is true that the deceased went to Dr. Spiegel at the request of his attorneys, it was also brought out that the doctor's name was suggested to him by one of Dr. Shabat's clerks, and although Dr. Spiegel was aware that litigation was pending over the injuries complained of, the testimony is not inadmissible for that reason alone. Shell Oil Co. v. Industrial Com., 2 Ill.2d 590, 602, 119 N.E.2d 224.

Dr. Spiegel appears to be an eminently qualified neurological surgeon, with considerable experience in the treatment of back disorders. The deceased saw him on approximately ten different occasions prior to the trial and was still under his care at the time of the first trial.

Dr. Spiegel's diagnosis and the other medical evidence was examined in detail in our earlier opinion in Jensen v. Elgin, J. & E. Ry. Co., 15 Ill.App.2d 559, 560-f–560-o, 147 N.E.2d 204. However, in the opinion on Rehearing, which followed the decision of the Supreme

216

Court in Bowman v. Illinois Cent. R. Co., 11 Ill.2d 186, 142 N.E.2d 104, we concluded that "in Federal Employers' Liability Act cases, we are limited to determining whether there was an evidentiary basis for the verdict, and that it is error to reweigh the evidence and set aside the verdict." We then said that "on the record in the case at bar, we do not have the right to decide that the finding of the jury on damages is against the manifest weight of evidence." 15 Ill.App.2d 559, 560-q. The judgment was reversed because of the giving of a prejudicial instruction, and the case was remanded for a new trial on the issue of damages.

We are therefore limited to a determination as to the "admissibility" of Dr. Spiegel's testimony. We do not regard his testimony as having been elicited solely for the purposes of the trial and although "the subjective symptoms were elicited under circumstances greatly impairing their probative value", we do not find that this amounted to reversible error.

The evidence at the trial established that Ole Jensen was in good health prior to his accident. He was described as a muscular man, six feet two, and weighing about 230 pounds. In the year preceding the accident, he was earning close to $8,000.00, but as the result of his injuries on August 8, 1954, he was unable to work again until April 27, 1956. Clinton Hanley, a co-worker, testified that he saw Ole Jensen shortly after the accident and that he was holding his back and complaining of pain in his back and that during his visits with Jensen following the accident, he never saw Jensen without his steel corset. Dr. Fred Zeiss, an orthopedic surgeon, employed by the defendant, testified that he found that the pain in the lower back region was concentrated a little off the midline to the right. He noted that he could substantiate that, not only by what the patient told him, but by actual physical examination, he elicited tenderness at that point. His

217

diagnosis was that there was a sprain of the lower back, a tearing of some of the musculature of the lower back. In Dr. Zeiss' opinion, the region that was sprained or torn was the sacrospinalis muscle. Dr. Spiegel's diagnosis was that there was a probability of a rupture of one of the intervertebral discs.

What was said in the case of Greinke v. Chicago City Ry. Co., 234 Ill. 564, 574, is particularly apt here. "When the court can see from the record that an error committed by the trial court in the progress of the case was a harmless one, or that its injurious effect or harmful character was obviated, so as not to affect injuriously, in the final judgment, the rights of the party against whom the error was committed, it should not be allowed to work a reversal. It is more important in the administration of justice that litigation should end in the attainment of substantial justice than that a record of the proceedings should be built up which is without flaw or blemish."

In view of the fact that the decedent's personal injuries were substantiated by independent evidence, we do not regard the admission of the controverted medical testimony as amounting to reversible error.

Defendant's final objection is to the "per diem argument" for pain and suffering. Plaintiff's counsel was permitted to argue to the jury an hourly rate for the evaluation of the deceased's pain and suffering. He used the formula of $18.00 a day ($1.00 an hour for 18 hours a day) for the first year following the accident and $8.00 a day for the second year, for a total of $8,760.00 as adequate compensation for the deceased's pain and suffering. Defendant's objection is that such an argument is "speculative" and is not based on the evidence.

This precise question has not been authoritatively determined in this jurisdiction. The weight of authori-

ty in other states favors the use in argument of a mathematical formula such as suggesting the amount on a per diem basis where damages for pain and suffering are involved. (See Ratner v. Arrington, (Fla. 1959) 11 So.2d 82, 88, for an extensive citation of cases and law review commentaries on this subject.) In the Ratner case, supra, the court pointed out that ". . . the very absence of a fixed rule or standard for any monetary admeasurement of pain and suffering as an element of damages supplies a reason why counsel for the parties should be alloted, on this item of damages, their entitled latitude in argument—to comment on the evidence, its nature and effect, and to note all proper inferences which reasonably may spring from the evidence adduced." 11 So.2d 82, 89. The use of a mathematical formula for "purely illustrative purposes" was also permitted in Boutang v. Twin City Bus Co., 284 Minn. 240, 80 N.W.2d 30, 39. In Continental Bus System, Inc. v. Toombs, 325 S.W.2d 153, 165, the court acknowledged that the "selection of a total pain and suffering damage figure en masse 'by guess and by golly' is likely to be lower than a figure calculated by first arriving at an 'average per day' damage figure and multiplying it by the number of days established as a period in the evidence." Still, the court regarded the per diem method as "more reasonable and accurate and more likely to result in a just and proper allowance for this character of damages when the evidence establishes both the period and evidence from which an average daily degree of pain might be inferred, together with a value thereof." In L. & N. R. R. Co. v. Mattingly (Ky. 1960), 339 S.W.2d 155, 161, the court noted that ". . . it is no more speculative to suggest a per diem figure than it is to suggest the total amount. If the argument results in an excessive verdict, the control lies in the court . . . ". In Imperial Oil, Lmtd., v.

219

Drlik, 234 F.2d 4, 11, the court upheld an award based upon a mathematical calculation of the amount of pain and suffering. The court admitted that the method employed was a "novel" one, but went on to say that ". . . in determining the amount of an award for pain and suffering a juror or judge should necessarily be guided by some reasonable and practical considerations. It should not be a blind guess or the pulling of a figure out of the air". See also, Arnold v. Ellis, 231 Miss. 757, 97 So.2d 744; Johnson v. Brown, (Nev. 1959), 345 P.2d 754; Jones v. Hogan, (Wash. 1960), 351 P.2d 153; 60 A.L.R.2d 1347, 1350–1353.

In Bowers v. Penn. R. R. Co., 182 F. Supp. 756, 759, the District Court in Delaware refused to grant a motion for a new trial where the plaintiff's attorney engaged in a per diem argument on the monetary value of his client's pain and suffering, even though the Supreme Court of Delaware would have required a new trial on that ground in a proceeding under State law. The District Judge indicated that the cause of action under the Federal Employers' Liability Act, (45 U. S. C. 51), was created by federal statute and is to be governed by federal, not state, decisions. He upheld the verdict as "fair", and in the absence of any federal decisions bearing directly on the per diem point, he based his ruling on the authority of Imperial Oil Lmtd. v. Drlik, 234 F.2d 4. Although this opinion does not explicitly hold that a per diem argument is permissible in a FELA case, it is persuasive authority for this proposition.

Equally persuasive is the very able opinion of Presiding Justice Smith in the recent case of Caley v. Manicke, 29 Ill App2d 323, upholding the use of a per diem argument for pain and suffering. The court, in a worthy analysis of the problem, summarized its reasons for allowing the argument: "In the first place,

such an argument can suggest valid considerations for rendering the abstraction of pain and suffering comprehensible for concrete translation into dollars; Secondly, the argument is logically suggested by the evidence when read in context with the monetary determination that must be made; Thirdly, this line of argument falls within hitherto accepted bounds of advocacy and it is not apparent to us where it now o're leaps them." Caley v. Manicke, p 14. The court observed that since it is proper in Illinois to argue for a given total (Graham v. Mattoon City Railway Co., 234 Ill 483, 84 NE2d 1070), then the method arriving at the total would also be proper.

We are inclined to regard this use of the per diem argument as a more adequate resolution of the problem and clearly less speculative than the "by gosh and by golly" approach. The argument, of course, is not evidence, but we can confidently say, as did the Supreme Court of Washington, that ". . . we cannot attribute to any jury in this state a lack of sufficient mentality to distinguish between the two." Jones v. Hogan (Wash. 1960), 351 P.2d 153, 159.

In my opinion judgment for the plaintiff should be affirmed.

BURKE, P. J., and FRIEND, J., agree with the minority opinion holding that the court did not err in its rulings on the admissibility of evidence and in permitting plaintiff's counsel to argue to the jury an hourly rate for the evaluation of pain and suffering.