(No. 36686.—

NANCY JENSEN, Admx., Appellant, *vs.* ELGIN, JOLIET AND EASTERN RAILWAY COMPANY, Appellee.

*Opinion filed March 23, 1962.—Rehearing denied May 23, 1962.*

384

Solfisburg, J., dissenting.

Samuel E. Bublick and Meyer Z. Grant, of Chicago, (Nat P. Ozmon, of counsel,) for appellant.

Stevenson, Conaghan, Hackbert, Rooks and Pitts, of Chicago, (Harlan L. Hackbert, of counsel,) for appellee.

Mr. Justice House delivered the opinion of the court:

The first question presented by this appeal is whether a cause of action which an injured employee has under section 1 of the Federal Employer's Liability Act (45 U.S.C. 51) will under provisions of section 9 of the act (45 U.S.C. 59) survive his death for the benefit of his adult nondependent children. Section 9 provides that "Any right of action given by this chapter to a person suffering injury shall survive to his or her personal representative, for the benefit of the widow or husband and children of such employee * * *." The Appellate Court, First District, construed "children" as used in section 9 to mean "minor dependent children"

and reversed a judgment of the circuit court of Cook County awarding to the personal representative of Ole Jensen, deceased, for the benefit of his three adult non-dependent children, $10,000 for damages sustained by Jensen during his lifetime. *Jensen* v. *Elgin, Joliet and Eastern Railway Co.* 31 Ill. App. 2d 198.

Section 1 of the act, after declaring the liability of common carriers by railroad in interstate or foreign commerce for negligent injuries to its employees, provides that in case of the wrongful death of such employee a cause of action accrues "to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee * * *." The Appellate Court, after reviewing a number of decisions interpreting the wrongful death provisions of section 1, concluded that the word "children" as used in that section had been construed to mean "minor dependent children." Since the phraseology defining the beneficiaries in section 1 is identical with that defining the beneficiaries for whose benefit an action survives under section 9 the Appellate Court held that the word "children" as used in section 9 must also be construed to mean "minor dependent children." In this we believe the court erred. An examination of the cases construing the provisions of section 1 leads us to the conclusion that the word "children" has not been given other than its ordinary meaning and that the inability of any of the beneficiaries designated in section 1 to recover is simply the result of the measure of damages and basis of liability under that section.

In *Michigan Central Railroad Co.* v. *Vreeland*, 227 U.S. 59, 57 L. ed. 417, the Supreme Court in considering the wrongful death provisions stated: "This cause of action is independent of any cause of action which the decedent had, and includes no damages which he might have recovered for his injury if he had survived. It is one beyond that which the decedent had,—one proceeding upon altogether different principles. It is a liability for the loss and damage sustained

by relatives dependent upon the decedent. It is therefore a liability for the pecuniary damages resulting to them, and for that only." 227 U.S. 59, 68, 57 L. ed. 417, 421.

In *St. Louis Iron Mountain & Southern Railway* v. *Craft,* 237 U.S. 648, 59 L. ed. 1160, the court pointed out that the basis of liability under the wrongful death provisions of section 1 is the wrong to the beneficiaries in causing their pecuniary loss. If a child has suffered no pecuniary loss then he has not been damaged and there is no basis of liability. *Gulf Colorado & Santa Fe Railway* v. *McGinnis,* 228 U.S. 173, 57 L. ed. 785.

The basis of liability for an action which survives under section 9 is, on the other hand, the wrong to the injured employee and the measure of damages is his personal loss and suffering before he died. (*St. Louis Iron Mountain & Southern Railway* v. *Craft,* 237 U.S. 648, 59 L. ed. 1160.) Thus, the basis of liability and measure of damages that may operate to prevent some children from recovering under the wrongful death provisions of section 1 are not present in an action which survives under section 9. We are of the opinion that the word "children" has its ordinary dictionary meaning in both sections 1 and 9. The Appellate Court by construing the word "children" to mean "minor dependent children" unnecessarily placed a restriction on beneficiaries clearly designated in section 9, a restriction which exists under section 1 only because of the inherent nature of a wrongful death action.

The next issue is whether it is proper for counsel to use a formula and suggested figures in arguing that a certain sum of money should be awarded for pain and suffering. Plaintiff's counsel was permitted, over objection, to argue to the jury an hourly rate for the evaluation of the deceased's pain and suffering. He suggested that the jury in applying the formula use $1 per hour for 18 hours per day for the first year following the accident and $8 per day for the second year.

This issue, together with the same arguments as are here advanced, were presented to us in *Caley* v. *Manicke, post,* p. 390, where we hold that it was reversible error to permit counsel to use this sort of a mathematical formula in his argument to the jury. Our decision in that case is controlling here.

A question which arose at the trial below and which may arise on another trial of the damage question is whether the testimony of Dr. Spiegel was admissible. A detailed description of Dr. Spiegel's testimony is set out in *Jensen* v. *Elgin, Joliet and Eastern Railway Co.* 15 Ill. App. 2d 559.

Jensen injured his back on Thursday, July 29, 1954. He immediately reported the injury to his superior and went to the company hospital where a doctor examined him, taped his back and gave him pills to relieve his pain. He worked the remainder of that day and until August 8, 1954. He was treated by defendant's doctors until September 14, 1954 when he was discharged from further treatment and given a back-to-work slip. He did not, however, return to work.

In the middle of August 1954, while still being treated by the company doctor, he went to Doctor Shabat who ordered a brace for his back, gave him pills to relieve his pain, and had him use a heat pad and a bed board. Doctor Zeitlin X-rayed Jensen's back at the request of Doctor Shabat. He saw Doctor Shabat about 15 times, the last visit being on June 7, 1955. Suit had been filed on January 6, 1955.

In August, 1955, he went to Doctor Spiegel at the suggestion of one of his attorneys and not at the suggestion or with the knowledge of Doctor Shabat. Jensen knew that Doctor Spiegel was to make a report to his lawyer. Doctor Spiegel knew the patient had been referred to him by the lawyer, and assumed that a suit was pending and that he might be called to testify.

Doctor Spiegel performed Nafziger, Fabere and Lesegue tests on Jensen. The responses to the first two tests were

normal but the latter indicated to the doctor a possibility of a rupture of the intervertebral disc. The limitations of motion of the legs and back described during that test were based on the patient's complaint of pain and by the tensing of the hamstring muscles which are also under the voluntary control of the patient. Doctor Spiegel did not use a myelogram to ascertain whether the patient had a ruptured disc because he said it is generally used only as a preparation for surgical intervention. He did not give him any treatment, never had him go to a hospital and never had his back X-rayed.

Doctor Spiegel admitted that his diagnosis of a possible ruptured disc was based on subjective symptoms elicited from the patient, but stated that unless the patient is a good actor, an experienced observer would not be fooled. When the doctor was then told that a month after his last examination of the patient, the patient and another man moved 11,000 pounds of furniture, including a piano and refrigerators into a two-story house, the doctor explained that he could have been fooled or the patient had a remission.

Statements of pain and symptoms are admissible as an exception to the hearsay rule, if made by a patient to a physician for purposes of diagnosis and treatment, on the theory that the desire for proper treatment outweighs any motive to falsify. (*Greinke* v. *Chicago City Railway Co.* 234 Ill. 564.) Since the cause of an injury may be a factor in diagnosis, statements of the cause of an injury or condition have been held admissible because they also fall within the guarantee of truthfulness. (*Shell Oil Co.* v. *Industrial Com.* 2 Ill.2d 590.) Evidence of statements and physical demonstration capable of simulation are not admissible, however, if made to a physician examining for the purpose of testifying, and he is limited to testifying to purely objective conditions. *Greinke* v. *Chicago City Railway Co.* 234 Ill. 564; *Shaughnessy* v. *Holt*, 236 Ill. 485.

Doctor Spiegel testified that as a consultant he leaves the treatment of the patient to the doctor who sends the patient, unless he himself operates on the patient, and that in this case he did not prescribe the pain medication, physical therapy or corset for Jensen but merely suggested it to Doctor Shabat. The trial court thereafter permitted Doctor Spiegel to testify as a treating physician to statements concerning the medical history of the patient and the cause of the injury and to state his diagnosis which was based entirely on subjective symptoms elicited from the patient. The testimony of Jensen at the earlier trial shows that Doctor Shabat, his treating physician, did not suggest that he go to Doctor Spiegel or even know that he was going to see him. Furthermore, the last time Jensen visited Doctor Shabat was in June 1955 and the first time he visited Doctor Spiegel was in August 1955. There is nothing to indicate that Jensen thought his statements to Doctor Spiegel concerning his injury would be used as a basis for treatment by Doctor Spiegel or Doctor Shabat. Not only does the record fail to show that Doctor Spiegel was acting as a consultant to a treating physician, but it also fails to indicate that the patient knew of such arrangement.

Doctor Spiegel appears to be an eminently qualified neurological surgeon. His diagnosis of a ruptured disc was, however, based entirely on subjective symptoms; and, as the Appellate Court pointed out, the chief purpose of the examination appears to have been to give the attorney a report on Jensen's condition with a view toward testifying. (15 Ill. App. 2d 559, 560.) The doctor's testimony under these circumstances was inadmissible. *Shaughnessy* v. *Holt*, 236 Ill. 485; *Greinke* v. *Chicago City Railway Co.* 234 Ill. 564.

The judgment of the Appellate Court for the First District is reversed, and the cause is remanded to the circuit court of Cook County for a new trial on the question of damages sustained by the deceased.

*Reversed and remanded.*

Mr. Justice Solfisburg, dissenting:

I dissent from the opinion of the court for the reasons stated in my dissenting opinon to *Caley* v. *Manicke, post,* 390.