AVEMCO INSURANCE COMPANY, a Maryland Corporation, and Loss Management Services Co., a Maryland Corporation, Plaintiffs,

v.

James McCRONE, Mary Lucente, Administrator of the Estate of Larry Lucente, Deceased, and Jean Lucente, Administrator of the Estate of Robert Lucente, Deceased Defendants.

No. 90 C 1533.

United States District Court, N.D. Illinois, E.D.

Jan. 23, 1991.

Supplementary Opinion March 4, 1991.

---

John Scott Hoff, Michael Dean Simmons, Brandt Randall Madsen, Lapin, Hoff, Spangler & Greenberg, Chicago, Ill., for plaintiffs.

William Allen Vlasek, Molenaar & Vlasek, Ltd., Lansing, Ill., Michael William Rathsack, Chicago, Ill., for Mary Lucente.

Ronald N. Primack, Lansing, Ill., for Jean Lucente.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

This matter is before the court on the plaintiffs' motion for summary judgment. The plaintiffs, Avemco Insurance Company and Loss Management Services Co. (collectively, "Avemco"), have filed for federal interpleader and declaratory judgment on the interpretation of a liability insurance policy issued by Avemco in favor of Robert Lucente, now deceased. For the following reasons, we deny Avemco's motion.

### Background

The parties agree that the facts are not in dispute. Avemco issued an insurance policy, No. NC1–373008–2 ("the policy") favoring Robert Lucente, which included coverage for the operation and use of the insured airplane. On January 1, 1989, the insured was involved in an airplane accident in Illinois that resulted in the deaths of Robert Lucente and Lucente's adult son, Larry Lucente. The insurance policy was in effect at the time of the accident. Thereafter the estate and/or the heirs of Larry Lucente made a claim against the heirs and estate of Robert Lucente. The claim was then turned over to Avemco.

The sole issue before us is whether the estate and heirs of Larry Lucente are entitled to an insurance settlement limited to $12,500.00 or whether they may recover $100,000.00 or more as a consequence of Larry Lucente's death. The term at issue here is "child" as it is used in the limitations section of the policy:

Part I—Limits of Liability

(1) The limit for 'each person' is the most we will pay for bodily injury to one person in one accident.

However, the most we will pay for bodily injury to:

(a) an insured person's spouse will be 25% of the limit for 'each person,' but not more than $25,000;

(b) an insured person's parent or child will be 12½% of the limit for 'each person,' but not more than $12,500....

For purposes of this matter and in offer of settlement only, Avemco concedes that $12,500.00 of indemnity is potentially due to third parties for the death of Larry Lucente, and Avemco wishes to deposit and interplead that sum with the court. The defendants, however, argue that Larry Lucente was the *adult* child of the insured and that the policy language should not be interpreted to limit recovery for his loss of life to $12,500.

### Discussion

For defendants to prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). At this stage, we do not weigh evidence or determine the truth of asserted matters. We simply determine whether there is a genuine issue for trial, i.e., "whether a proper jury question was presented."

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If the nonmoving party bears "the burden of proof at trial on a dispositive issue, [however] ... the nonmoving party [is required] to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), quoting Fed.R.Civ.P. 56(e).

The question before us is whether the term "child" may be read only to mean, in effect, "minor child" or whether "child" may also be read to refer to the relationship to the insured, in which case a "child" may be a minor or an adult.

Our inquiry here is whether the term is ambiguous, because an ambiguous insurance contract term, especially one that purports to limit liability, should be construed in favor of the insured. *National Fidelity Life Ins. Co. v. Karaganis,* 811 F.2d 357, 361 (7th Cir.1987); *Dubosz v. State Farm Fire & Casualty Co.,* 120 Ill.App.3d 674, 76 Ill.Dec. 211, 214, 458 N.E.2d 611, 614 (2d Dist.1983) (citing *State Farm Fire and Casualty Co. v. Moore,* 103 Ill.App.3d 250, 255, 58 Ill.Dec. 609, 430 N.E.2d 641 (1981)). The insured's interpretation of an ambiguous provision controls because the purpose of the contract is to indemnify the insured. *Karaganis,* 811 F.2d at 361. A contract term is ambiguous if it admits of more than one reasonable interpretation. *Karaganis,* 811 F.2d at 361, citing *Goldblatt Bros. Inc. v. Home Indem. Co.,* 773 F.2d 121, 125 (7th Cir.1985); *Moore,* 103 Ill.App.3d at 256, 58 Ill.Dec. at 614, 430 N.E.2d at 646. Finally, in order to determine whether an ambiguity exists, the provisions of the contract should be read together. *United States Fire Ins. Co. v. Schnackenberg,* 88 Ill.2d 1, 57 Ill.Dec. 840, 842, 429 N.E.2d 1203, 1205 (1981).

We must now consider whether the term "child" as used in the policy admits of more than one reasonable meaning. Justice Holmes' too oft-quoted comment must be repeated here: "A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." *Towne v. Eisner,* 245 U.S. 418, 425, 38 S.Ct. 158, 159, 62 L.Ed. 372 (1918), quoted in E. Farnsworth, *Contracts* 498 (2d Ed. 1990). We find that "child" is less than crystalline in its clarity.

We first look to the limitation of liability section and note that there is some obvious attempt to treat family members in a different fashion from other "persons." Avemco argues that such limitations on indemnity for family members are common and are designed to prevent fraudulent intra-family claims. The limitation of liability here is placed on the insured's spouse and parent as well as the insured's "child." Clearly the limitation placed on either the spouse or parent does not take into consideration that family member's age. We do note, however, that the risk of fraudulent claims is greater when the injured "child" is a minor and still living in the insured's household. The risk of fraudulent claims may be of less concern when, as here, the injured "child" is an adult with his own dependents. Therefore, we cannot say that the context in which the term is found *requires* a reading inconsistent with the defendants'.

That the term has at least two possible meanings in common parlance is beyond question. *Black's* defines the word as "[p]rogeny; offspring of parentage." *Black's Law Dictionary,* 217 (5th Ed.1979). The defendants' trip to *Webster's,* however, reveals that the initial entries under "child" are "an unborn or recently born human being" and "a young person of either sex, especially one between infancy and youth." *Webster's New International Dictionary,* 465 (2d Ed.1941). Only the fourth entry in *Webster's* offers the definition of "son or daughter." *Id.*

Were there a clear, single legal definition of the word, we would need to go no further. *Illinois Nat'l Ins. Co. v. Szczepkowicz,* 185 Ill.App.3d 1091, 134 Ill.Dec. 90, 92, 542 N.E.2d 90, 92 (1st Dist.1989). How-

ever, this is far from the case. Avemco cites *Jensen v. Elgin, J & E Ry Co.*, 24 Ill.2d 383, 182 N.E.2d 211, 213 (1962), in support of his argument that there has been an Illinois judicial determination of the meaning of the word. The *Jensen* court determined that the word "children" cannot be restricted to "minor dependent children," but must be given its "ordinary dictionary meaning." *Id.* In that case the word was being examined in an effort to interpret a statute, not a contract; here we need not decide the "true" meaning but only determine whether there is ambiguity.

In any case, as the defendants argue quite ably (and as Justice Holmes would acknowledge), the vagaries of English usage are such that we might quite comfortably refer to our adult offspring as our "children." However, we would be much less likely to refer to our 21–year–old as our "child" (although we certainly *could* do so). Such an analysis of usage serves only to illustrate the slipperiness of the word. Defendants' Response, pp. 5–6. Perhaps if the policy term had been "children" this would have been a different case, but in the insurance policy at issue, we must consider only the possible ambiguity of the word "child."

We find that the word "child" in this context may have more than one reasonable interpretation. Because of this ambiguity, we find that the policy provision must be read to favor the insured; therefore, in this instance the term "child" will be read to mean "minor child" and the limitation of $12,500.00 will not be enforced.

### Conclusion

The material facts are not in dispute; however, we find that Avemco is not entitled to judgment as a matter of law. Consequently, we deny the motion.

### SUPPLEMENTARY OPINION

The plaintiffs, collectively "Avemco", have asked us to reconsider our order of January 23, 1991, which denied their motion for summary judgment. Avemco had asked for a declaratory judgment that the limitation of liability section of the insurance policy that they had issued to the deceased, Robert Lucente, barred recovery by Lucente's son's family of more than $12,500.00. The question before us was whether the term "child," as used in the policy, is ambiguous. The Lucente family maintained that the word is ambiguous because it may mean either "minor child" or "son or daughter", regardless of age. Avemco maintained that the word must be construed in its more expansive sense to bar recovery to a "child" of any age. We disagreed with Avemco, found the word to be ambiguous, and construed the insurance contract to favor the insured.

We deny the motion to reconsider. Avemco cites two additional cases, a 1940 New York case and an unpublished Minnesota appellate court opinion, neither of which binds us. *Ecklin v. Planet Ins. Co.*, C7–90–1521, 1991 WL 1956 (1991) (unpublished); *Mindlin v. Consolidated tax Payers Mut. Ins. Co.*, 19 N.Y.S.2d 340, 173 Misc. 961 (1940).

While we have determined that the word "child" is ambiguous, we are aware that this decision, to some extent, contradicts the Illinois Supreme Court decision in *Jensen v. Elgin, J & E Ry. Co.*, 24 Ill.2d 383, 182 N.E.2d 211 (1962). This case is before us pursuant to our diversity jurisdiction, and the parties do not dispute that Illinois law governs; therefore, we take the time now to expand on our earlier analysis of *Jensen*.

The *Jensen* court reversed the Illinois Appellate Court's earlier holding that "children" as used in § 9 of the Federal Employers' Liability Act ("FELA") (the survival section) referred only to "minor dependent children." *Jensen v. Elgin, J & E Ry. Co.*, 31 Ill.App.2d 198, 175 N.E.2d 564 (1961). The Illinois Supreme Court noted that the lower court had analyzed cases dealing with § 1 of FELA, a section that limited liability for the employee's wrongful death to beneficiaries who had sustained pecuniary losses. Because such losses were predicated on the child's dependence on the decedent, the lower court construed the term to mean "minor depend-

ent" only. *Jensen*, 182 N.E.2d at 213. The lower court then transposed this meaning to § 9, which used identical language. The Supreme Court said that while the language in § 9 is identical, the coverage offered by § 9 is significantly broader than § 1 coverage. Section 9 promises that in cases of wrongful death a cause of action accrues to "his or her personal representative, for the benefit of the surviving widow or husband and children of such employee...." *Id.* Thus, because the coverage of § 9 is not dependent on a showing of the *child's* loss, but rather on the *employee's* loss, the court determined that the legislature had not limited potential beneficiaries, as a practical matter, to dependent minors. *Id.* We have no quarrel with the Illinois Supreme Court that the lower court's construction of the word would defeat the purpose of § 9.

Where we must part company with the *Jensen* court, however, is in its assertion (in which Avemco puts much stock) that the "ordinary dictionary meaning"[1] of the word "children" is the one that denotes a relationship only. *Id.* Our forays into several dictionaries reveal that this is far from the ordinary meaning.[2] In addition, a quick scan of *Words and Phrases* under

the "child" entry leaves us in no doubt that the word is fraught with difficulty and has required frequent interpretation, which varies from jurisdiction to jurisdiction and context to context.

In any case, our task is in a sense easier than that of the *Jensen* court; we need not decide exactly what the word means, we need only decide whether it admits of more than one reasonable meaning. Nor do we ignore the context of the word. While the purpose of the limitations section is clearly to curb liability for injuries to family members, the words "parent" and "spouse" simply do not create the potential for confusion that "child" does. We feel that if the problem were posed to the Illinois Supreme Court in this posture, it would concur with our finding that the word is ambiguous.

We would also note that insurance contracts are contracts of adhesion, and the signatories to such contracts are rarely attorneys who are able to scrutinize every word or phrase to track down potential ambiguities. *See State Farm Mut. Auto. Ins. Co. v. Schmitt*, 94 Ill.App.3d 1062, 50 Ill.Dec. 493, 419 N.E.2d 601, 602 (Ill.App. 1st Dist.1981) ("[T]he provisions in an insurance policy do not result from negotiation but are written by the insurer and

---

**1.** The *Jensen* court's use of this "ordinary" definition may stem from the lower court's use of the entry in *Black's Law Dictionary*: "the term 'child' as used in the law when speaking of a decedent means a son or daughter of a parent irrespective of age." *Jensen*, 175 N.E.2d at 567.

**2.** For example, *Webster's New International Dictionary*, 465 (2d Ed.1941) defines "child" as "1. a. An unborn or recently born human being; fetus; infant; baby; ... 2. A young person of either sex, esp. one between infancy and youth; hence one who exhibits the characteristics of a very young person, as innocence, obedience, trust, etc. 3. A youth of noble birth; ... 4. A son or a daughter; a male or female descendant in the first degree...." *The Random House College Dictionary*, 233 (1973) defines "child" as "1. a boy or girl. 2. a son or daughter. 3. a baby or infant. 4. a childish person 5. a descendant...." *Webster's II New Riverside University Dictionary*, 255 (1984) defines "child" as "1. A person between birth and puberty. 2. a. An unborn infant: FETUS. b. a baby: infant. 3. A childish or immature person. 4. A son or daughter: Offspring...."

Legal dictionaries are rather more favorable to Avemco's position, but we are not convinced that they reveal the "ordinary" meaning as op-

posed to the "legal" meaning. For example, *Black's Law Dictionary*, 217 (5th Ed.1979) defines "child" as "Progeny; offspring of parentage. Unborn or recently born human being ... At common law one who had not attained the age of fourteen years, though the meaning now varies in different statutes,...." *Bouvier's Law Dictionary*, 479–80 (1914) defines "child" as "The son or daughter, in relation to the father or mother," but goes on to deliver a lengthy entry revealing how the term is used in different contexts to refer to offspring and minors.

In *Burns v. Alcala*, 420 U.S. 575, 579 n. 3, 95 S.Ct. 1180, 1183 n. 3, 43 L.Ed.2d 469 (1975), the Court, in deciding that Aid to Families with Dependent Children did not cover "unborn children," was faced with the need to define "minor dependent child." After noting that *Webster's* included among its definitions of "child" "an unborn or recently born human being: FETUS, INFANT, BABY," the Court remarked that "reliance on dictionaries cannot solve the question presented in this case [determination of a statute's coverage]. At most, the dictionaries demonstrate the possible ambiguity in the term 'dependent child.'" *Id.*

submitted to the prospective insured for acceptance without change.... Therefore, exclusion provisions should only be applied where their terms are clear, definite and explicit.") Insurance coverage and the limitations on same, especially when such limitations may bear on the potential welfare of loved ones of any age, must be clearly laid out. If this opinion serves to encourage insurance companies to clarify their language, perhaps by the simple expedient of using the terms "minor child" or "son or daughter," [3] so much the better.

### Conclusion

We deny the motion to reconsider and re-affirm our order of January 23, 1991.

---

**3.** Or an insurer may elect to include an expanded definition of "child" in a separate "Definitions" section of the policy.