# Richmond

## CERTIFIED T. V. AND APPLIANCE COMPANY, INCORPORATED v. CATHERINE HARRINGTON.

June 22, 1959.

Record No. 4955.

Present, All the Justices.

The opinion states the case.

Robert G. Winters (George Pilcher, Jr.; Pilcher, Underwood, Pilcher & Winters, on brief), for the plaintiff in error.

Calvin Breit (Robert S. Cohen; Babalas & Breit, on brief), for the defendant in error.

I'Anson, J., delivered the opinion of the court.

Catherine Harrington, hereinafter referred to as the plaintiff, filed a motion for judgment against Certified T. V. and Appliance Company, Incorporated, hereinafter referred to as the defendant, for damages sustained while a customer in the defendant's place of business when a shelf displaying television sets collapsed and fell on her, causing bodily injuries. The case was tried by a jury and resulted in a verdict in favor of the plaintiff in the amount of $12,-500.00. The trial court entered a judgment on the verdict and we granted a writ of error and supersedeas.

In its assignment of errors the defendant contends that the court erred as follows:

(1) In refusing to grant instructions numbered 2, 3, 4, and 5, based on defendant's theory of the case that the negligence of the independent contractor in constructing the shelf created dangerous hidden defects which could not be discovered by a reasonable inspection, thereby relieving the defendant of liability for injuries to the plaintiff;

(2) In refusing to grant defendant's instruction number 7, which would have told the jury that under the Rules of Court the defendant could not implead the independent contractor who was the tortfeasor guilty of negligence, which was the sole proximate cause of the accident;

(3) In overruling the defendant's motion to prohibit plaintiff's use of the blackboard in the summation argument, on which her counsel placed improper suggestions of the items of evaluation of plaintiff's injuries to be considered by the jury in assessing damages; and

(4) In overruling defendant's motion to set aside the verdict on the ground that the plaintiff did not prove that the defendant failed to warn her of the imminent danger and condition of the shelf.

The plaintiff having prevailed in the lower court, the facts will be stated in the light most favorable to her.

On March 9, 1957, at approximately 5 P. M., the plaintiff, enceinte, with her husband and young child, entered the defendant's store to purchase a television set. While the plaintiff's husband was being shown various sets by an officer of the defendant company he noticed that the shelf on which many sets had been placed for display was "weaving" and he exclaimed, "That shelf is loose!" The officer of the defendant company said, "Oh, that is all right. It has been like that. We are getting it fixed." Almost simultaneously with this conversation the shelf with the television sets collapsed and fell on top of the plaintiff and her son, pinning her to the floor and causing her bodily injuries.

The plaintiff's husband testified that immediately after the accident the officer of the corporation who was waiting on him stated to Police Officer Davis that, "The shelf has been loose like that. It has been like that for a couple of weeks." This statement was substantially corroborated by Officer Davis and witness Gibbons.

The contract for the construction of the shelf was entered into in October, 1954, by the defendant, on a cost plus basis, with the contractor who constructed the building leased by the defendant in the city of Norfolk while it was under construction. The shelf was 48 inches above the base platform and constructed in two sections, each section being 16 feet long and 27 inches wide. They were constructed with two pieces of lumber 2 by 4's, 16 feet long, with 2 by 4 cross bracing between and 3/4-inch sheathing nailed on top. Each section was secured to a wall by four sixpenny nails which were countersunk through the 2 by 4 pieces along the wall with a nail set until they were driven into the plastered wall. The sections were supported on the front by four pipes covered with chrome shower curtain rods, secured to the base platform and the shelf by pressed chrome metal flanges which were fastened by two screws each.

The construction of the shelf was completed in the early part of 1955. The work was accepted and paid for by the defendant shortly after completion.

From the day the shelf was accepted and the work paid for until March 9, 1957, when the shelf displaying portable television sets collapsed, only one inspection was made by the defendant company and that inspection was made approximately one year before the injury to the plaintiff. For nearly two and one-half years after the

shelf was installed the owners and employees of the defendant company placed and replaced table model television sets on it.

An expert contractor testified on behalf of the defendant that the shelf was not properly constructed and installed and that the defects could not be ascertained from an inspection of the finished shelf.

■ Defendant's first assignment of error deals with the refusal of the court to grant instructions numbered 2, 3, 4 and 5 offered by it. They were all based on the theory that the negligence of an independent contractor, resulting in hidden defects, created an intrinsically or inherently dangerous condition which could not be discovered by a reasonable inspection, thereby relieving defendant of the liability for any injuries to the plaintiff.

The defendant relies on *Roanoke Railway Co.* v. *Sterrett*, 108 Va. 533, 539, 62 S. E. 385, 387, in support of its argument that the instructions should have been given. In that case, which was decided on September 10, 1908, this court held that a street railway company is not liable for injuries sustained by a passenger resulting from the collapse of one of its bridges where it appears that the bridge was made by a competent and reliable manufacturer; was frequently and properly inspected; that the collapse was due to an imperfect weld in a cord which supported the bridge; and that the defect was hidden and could not have been discovered by the utmost scrutiny. The case fell in the category of an unavoidable accident which human care and foresight could not guard against.

The principle of law laid down in the *Roanoke* case has no application to the facts in this case. In the present case the evidence warrants the jury in finding that the defendant was guilty of negligence for failure to exercise ordinary care to inspect the shelf and for its failure to remedy and repair the known dangerous condition prior to the plaintiff's injury. The condition of the shelf was not such as could not be guarded against by reasonable care and foresight.

In *McCrorey* v. *Thomas*, 109 Va. 373, 378, 379, 63 S. E. 1011, 1013, 17 Ann. Cas. 373, decided on March 11, 1909, several months after *Roanoke Railway Co.* v. *Sterrett, supra*, involving a somewhat similar factual situation as the case at bar, this court held that it was not error to refuse an instruction embodying the same principles of law set out in defendant's instructions 2, 3, 4 and 5.

■ The defendant's second assignment of error is directed to the refusal of the court to grant instruction number 7, which would have told the jury that under the Rules of Court the defendant could not

implead the independent contractor who was the tort feasor guilty of negligence, which was the sole proximate cause of the accident. The instruction was properly refused. It sought to shift the responsibility of the defendant for its lack of reasonable care in keeping the shelf in a safe condition to the independent contractor.

 The defendant's third assignment of error is directed to the use of a blackboard by plaintiff's counsel in his summation argument, on which he placed improper suggestions of items of evaluation of plaintiff's injuries to be considered by the jury in assessing damages.

As to this assignment of error, the record shows that "during the argument" the following occurred:

"Mr. Pilcher: The defendant objects to the use of the blackboard by the plaintiff in its summation argument, on which blackboard there is listed the items of special damages, as well as suggested amounts for future pain and suffering and future damages. The blackboard discloses: Dr. Shoenfeld's bill of $40.00, Dr. Vann's bill of $110.00, Dr. Alpert's bill of $255.00, Mrs. Gibbons' bill of $280.00, past and future hospitalization ($1,200.00), $463.00; crutches, stockings $36.98; future medical $1,000.00, permanent phlebitis $5,475.00, traumatic arthritis at 50 cents—$5,475,00, mental anguish, re: pregnancy, five months—$750.00, seven weeks on crutches at $10.00 daily —$490.00, inability to wear shoes, dance, et cetera—$5,000.00; 20 percent permanent disability—$10,000.00—making a total of $29,374.98.

"The objection, among other things, is specifically called to the Court's attention as to permit a per diem valuation of pain, suffering and disability would plunge the already subjective determination into absurdity by demanding accurate mathematical computation of the present worth of an amount reached by guesswork. Suggestions of this sort constitute an unwarranted intrusion into the domain of the jury. The suggestions of valuation and compensation factors, pain and suffering, have no foundation in the evidence. They import into the trial elements of sheer speculation on a matter by which universal understanding is not susceptible of a valuation on any such basis. It instills in the minds of the jurors impressions, figures and amounts not founded or appearing in the evidence.

"The Court: Overruled; but I will insist upon counsel for the plaintiff turning his blackboard away from the jury except during his argument.

"Mr. Pilcher: I except to the action of the Court."

While it appears that the objection of defendant's counsel is to

the use of the blackboard in any way during the trial, the objection in the record and in his brief is directed specifically to permitting plaintiff's counsel to present to the jury a mathematical formula setting forth on a per diem or other fixed basis the amount designated as plaintiff's damages for pain, suffering and mental anguish.

The summation argument of plaintiff's counsel does not appear in the printed record but the quotation from the record set out above is sufficient to enable this court to pass on the propriety of plaintiff's counsel presenting to the jury a mathematical formula on a per diem or other fixed basis suggested by him as plaintiff's damages for pain, suffering and mental anguish.

The suggested amount for permanent phlebitis is the sum of $5,475.00, and, while the record does not show how counsel arrived at that figure, it can be assumed that it was fixed by calculating so many days of the ailment at 50 cents per day, since the next item listed is traumatic arthritis at 50 cents—$5,475.00. The next items, mental anguish, re: pregnancy, five months—$750.00, seven weeks on crutches at $10.00 per day—$490.00, and inability to wear shoes, dance, etc.—$5,000.00, appear to have been calculated on a basis of a fixed amount to be allowed each day for so many days. The last item of 20 percent total disability—$10,000.00 would appear to have been suggested by counsel and calculated on the plaintiff's life expectancy.

It has been repeatedly held in Virginia and in other jurisdictions that there is no fixed rule or yardstick by which to measure with mathematical precision the definite amount of damages for physical pain, suffering and mental anguish endured in personal injury cases. It is within the sound discretion of the jury to determine from the evidence what is fair and reasonable compensation, and a verdict of the jury will not be disturbed unless it appears that it was influenced by partiality, prejudice, corruption of the jury, or by some mistaken view of the evidence. *Lilley* v. *Simmons, an Infant, & c.*, 200 Va. 791, 108 S. E. 2d 245; *Williams Paving Co., Inc.* v. *Kreidl*, 200 Va. 196, 204, 104 S. E. 2d 758, 764; *National Fruit Co., Inc.* v. *Wagner*, 185 Va. 38, 40, 37 S. E. 2d 757, 758; *Simmons* v. *Boyd*, 199 Va. 806, 811, 102 S. E. 2d 292, 295; 5 Mich. Jur., Damages, § 30, p. 520; 25 C. J. S., Damages, § 196, p. 910; 15 Am. Jur., Damages, § 71, p. 479.

To permit plaintiff's counsel to suggest and argue to the jury an amount to be allowed for pain, suffering, mental anguish and disability

calculated on a daily or other fixed basis, allows him to invade the province of the jury and to get before it what does not appear in the evidence. Since an expert witness would not be permitted to testify as to the market value of pain and suffering, which differs in individuals and the degree thereof may vary from day to day, certainly there is all the more reason for counsel not to do so. The estimates of counsel may tend to instill in the minds of the jurors impressions not founded on the evidence. Verdicts should be based on deductions drawn by the jury from the evidence presented and not the mere adoption of calculations submitted by counsel.

We are of opinion that the use by plaintiff's counsel of a mathematical formula setting forth on a blackboard the claim of pain, suffering, mental anguish, and the percentage of disability suggested by him on a per diem or other fixed basis, was speculation of counsel unsupported by evidence, amounting to his given testimony in his summation argument, and that it was improper and constituted error. *Henne, et al.* v. *Balick,* (Del. 1958) 146 A. 2d 394, 398; *Botta* v. *Brunner,* (1958) 26 N. J. 82, 138 A. 2d 713, 60 A. L. R. 2d 1331, 1344, 1345, 1346; *Herb* v. *Hallowell,* 304 Pa. 128, 154 A. 582, 85 A. L. R. 1004; *Vaughan* v. *Magee,* 3 Cir., 218 F. 630; *Goodhart* v. *Pennsylvania RR. Co.,* 177 Pa. 1, 35 A. 191. Compare *Ratner* v. *Arrington,* (Fla. 1959) 111 So. 2d 82.

Most of the other items appearing on the blackboard appear to have been supported by the evidence. We find no error in using the blackboard to place upon it figures which were supported by the evidence.

The point raised in this assignment of error was the subject of a most interesting discussion at a meeting of the Virginia State Bar Association in August, 1958, and is found in the Reports of the association, Vol. LXIX, 1958, beginning at p. 42. See also Anno. 60 A. L. R. 2d, p. 1347, *et seq.*

The defendant's last assignment of error, that the court should have sustained its motion to set aside the verdict by reason of the plaintiff's failure to prove that she was not warned of the imminent danger and condition of the shelf, is without merit.

Under the law governing the facts of this case the plaintiff was not required affirmatively to prove that she had received no warning of a dangerous condition and the defendant has cited no case which supports its contention.

The liability of the defendant to the plaintiff is founded on the

right of the plaintiff, an invitee, to assume that the defendant's premises were in a reasonably safe condition for her visit. While the defendant was not an insurer of her safety it owed her the duty to use ordinary care to have its premises in a reasonably safe condition, and she was not required to be on the lookout for danger in the absence of knowledge or warning of its presence. Of course, she is chargeable with knowledge of a dangerous condition which is open and obvious to a person in the exercise of ordinary care for her safety. *Atlantic Co.* v. *Morrisette*, 198 Va. 332, 333, 334, 94 S. E. 2d 220, 222; *Charles* v. *Commonwealth Motors*, 195 Va. 576, 577, 79 S. E. 2d 594, 595; *Crocker* v. *WTAR Radio Corp.*, 194 Va. 572, 574, 74 S. E. 2d 51, 52, 53; *Knight* v. *Moore*, 179 Va. 139, 145, 146, 18 S. E. 2d 266, 269.

For the error of the trial court in permitting counsel for the plaintiff to use in his summation of argument the blackboard in the manner and under the circumstances stated, the judgment must be reversed. The issue of the liability of the defendant having been concluded by the verdict, there should be a new trial on the quantum of damages only. Code, § 8-493; *Johnson* v. *Kellam*, 162 Va. 757, 766, 175 S. E. 634, 637.

*Reversed and remanded.*