Strafford,
No. 4994.

LEWIS B. CHAMBERLAIN *v.* PALMER LUMBER CO.

Argued March 6, 1962.

Decided July 16, 1962.

*Fisher, Parsons & Moran* (*Mr. Harold D. Moran* orally), for the plaintiff.

*Cooper, Hall & Cooper* and *George W. Walker* (*Mr. Walker* orally), for the defendant.

LAMPRON, J. Defendant's first contention is that plaintiff's evidence was insufficient to prove that the injuries he sustained resulted from its negligence.

There was evidence that plaintiff arrived.at defendant's saw-mill with a truckload of logs shortly before noon while the mill was in operation. An employee of the defendant, named Corson signaled him to drive his truck to the brow where logs are unloaded to be fed into the mill. After stopping his truck, the plaintiff received a signal to proceed with the unloading from Corson who was standing beyond a pile of logs holding a peavey, which is used to roll logs. Plaintiff then moved to a position between his truck and the brow to remove the binders and chains which held the load of logs on his truck.

Plaintiff testified that he was facing his truck, with his back to the pile of logs, in the process of releasing the chains when Corson "hollered." "I turned and look . . . I saw a log coming towards me. I had no time to get away." He further testified that the log was coming from the top of the pile and Corson had changed his position and was then up on the pile. He also testified that until he turned and saw this log coming toward him

and was hit on the leg by it, the load on his truck had not moved. Corson testified that one log only was removed off the plaintiff after the accident. Another workman testified that plaintiff's "head was toward the brow and his chin was on the ground and this big eight-inch log was right across his neck."

Corson testified also as follows: "Q. Did you know it was dangerous to get upon the pile? A. Yes. Q. You know you shouldn't, isn't that right? A. Yes. Q. And if you did it you made a mistake, isn't that right? A. Yes . . . Q. Isn't that what happened here to be fair about it? You made a mistake and got up and started to move a twisted log and it got away from you, isn't that what happened? A. That I couldn't say. Q. You don't deny it, do you, Mr. Corson? A. No."

The plaintiff, with about fifteen years' experience in the lumbering industry, testified that if a person gets up on a pile of logs and disturbs them they are apt to "go most any way" and anyone connected with logging would realize that. For that reason he would not have placed himself between the pile and his truck if he had known someone was on the pile.

On the evidence the jury could find that plaintiff's injuries were incurred when he was hit by a log which came off the pile at the mill and that they were caused by the negligence of a servant of the defendant and not by his own contributory negligence. *Zielinski* v. *Cornwell*, 100 N. H. 34, 39.

Plaintiff was rendered unconscious by the blow received and when first examined at the hospital on the day of the accident, November 9, 1955, he was stunned and possibly even semiconscious. He had a laceration across the bridge of his nose, abrasions and bruises along his spine particularly in the low dorsal area and upper thoracic. He also had a severe concussion of the brain with swelling and impairment of memory as to events surrounding the accident. He was treated by Dr. Lord until February 24, 1956, and by Dr. Demopoulos until June of that year. Thereafter he received treatment from different chiropractors, one of whom he was still seeing twice a week at the time of the trial in October 1960, and paying about four dollars per week. His other bills were $146 for the services of Dr. Lord, $116 for those of Dr. Demopoulos and $150.62 paid to Frisbie Hospital.

Plaintiff testified that in October 1960 he was still bothered by his back and was limited in the work he could do and was wearing a belt prescribed by Dr. Demopoulos. He testified also that he still had headaches which might be continuous for a week, then appear maybe two or three times a week, all as a result of the accident. Dr. Demopoulos, who examined him at the time of the trial, testified that he found plaintiff's back muscles still tight, shortened, and painful if stretched; that he will never be rehabilitated as far as his back is concerned, and that he would have a lameness for the rest of his life which would render him unfit for heavy work. He further testified that the "awful posture" which he had probably resulted from the accident. He also testified that plaintiff had been totally disabled for work for about a year.

In this doctor's opinion, daily physiotherapy treatment for a period of six or eight weeks probably would have cleared up plaintiff's headaches entirely and his back condition almost completely, leaving him with a little residual weakness. He testified that if such treatment had been undertaken four years previously "the chances of improving him would have been far greater . . . than now." However he also testified that when last he treated plaintiff in June 1956 "In all fairness to him I don't know whether I asked him to come back or whether I spoke to Dr. Lord . . . Whether I asked him to come back, or what I did, I don't know." It was his impression that the plaintiff "is cooperating." This evidence did not compel a finding that plaintiff's failure to submit sooner to the suggested treatment constituted lack of due care. *Perreault* v. *Company*, 87 N. H. 306, 312. The Trial Court properly charged the jury that the plaintiff could recover for future damage for his injuries to such extent only as he could not avoid them by the exercise of due care in obtaining and taking treatment to effect a cure from any disabilities he now suffers. 25 C.J.S., Damages, *s. 33, p.* 501.

In his argument to the jury as to the amount of damages to be awarded, plaintiff's counsel stated "He had a year's pain and suffering going around with this bad back and headache. He had the anguish, the worry of whether he was going to be able to take care of his family or not . . . You are all people of experience. You know what goes with it. How much is it worth? I submit to you $5,000 for that year." The

Court overruled defendant's objection on the "understanding" that counsel did not mean to be giving his opinion as to the value of pain and suffering, but this was merely argument. Counsel then argued that for the next four years plaintiff should be allowed $2,400 a year for his pain and suffering. Defendant's objection was again overruled on the same ground and the Court instructed the jury that the figures were mentioned merely as argument.

We are of the opinion that part of this argument which places a specific dollar value on pain and suffering comes within the prohibition of the rule enunciated in *Duguay* v. *Gelinas*, 104 N. H. 182, that counsel in argument cannot state specific amounts for periods of pain and suffering as "the jury are given an illusion of certainty by the use of figures which are not and cannot be substantiated by evidence." *Id., p.* 185. The argument was clearly improper and since there is no certainty that it did not affect the verdict to the detriment of the defendant there must be a new trial. *Public Service Co.* v. *Chancey,* 94 N. H. 259, 262.

Plaintiff's further argument "if you adopted the figure of ten dollars a week for his pain and suffering and his mental anguish, his worry both in his work, marital life, or anything that would go with his condition that he has, you would have $13,750" also violates the rule of the *Duguay* case, *supra.*

Plaintiff's counsel argued further that plaintiff "is disabled to an extent and nobody disputes that and you have heard in detail the extent to which he is disabled, and I submit for that, if you took a figure of twenty-five dollars a week for this man having a bad back that started with a good back, and you add it up for twenty-seven and a half years [his life expectancy] for that particular item, you'd have twenty-seven thousand five hundred dollars for the fact that he is disabled." Defendant's objection to this argument was overruled on the ground that it related to loss of income resulting from disability and was proper. *Roussin* v. *Blood,* 90 N. H. 391; *Dowling* v. *Shattuck,* 91 N. H. 234, 240.

Similar arguments made in the above cases were held proper as an illustration or an example in arithmetic to show the jury how to compute such damages. In those cases, however, there was evidence that at the time of injury the plaintiff was earning the weekly amount used by counsel in his argument, and the jury could also find on the evidence that the plaintiff would

probably have continued to earn that amount for the period of his disability in the *Shattuck* case and for his life expectancy in the *Roussin* case.

Defendant in this case maintains there was no evidence to support a finding that the plaintiff's disability from the accident would cause him to lose $25 per week in income for the twenty-seven and a half years of his life expectancy. Evidence of his earnings before and after the accident was mostly in the form of copies of income tax returns for the years 1951 to 1959 except for 1954 which was missing. Some were joint returns, one at least was an individual return, the income reported consisted of wages and farm income. Because there must be a new trial, as previously stated, it would serve no useful purpose to undertake the difficult task of ascertaining if the income in those returns together with the evidence of plaintiff's disability would justify the argument made on the authority of the above cases. In order to permit such an argument there must be evidence which would warrant a finding that the plaintiff suffered a physical disability in the accident which probably would cause a loss of earning capacity measured both by the weekly or total amount in dollars and the period used by counsel in his argument. *Hill* v. *Company*, 96 N. H. 14, 17; *Pepin* v. *Beaulieu*, 102 N. H. 84, 88.

In view of the result reached there is no need to consider defendant's argument that the verdict was excessive.

*New trial.*

All concurred.