144 So.2d 840 (1962)
Mrs. William O. PERDUE and William O. Perdue, Jr., Appellants,
v.
Raymond M. WATSON, Appellee.
No. 2529.
District Court of Appeal of Florida. Second District.
August 29, 1962.
Rehearing Denied October 11, 1962.
Arthur M. Bell of Dart, Bell, Savary & Dickinson, Sarasota, for appellants.
Lawrence J. Robinson of Stockham, Robinson & Harrison, Sarasota for appellee.
SMITH, Judge.
Raymond M. Watson sued the defendants, who are appellants here, alleging that he was transported by William O. Perdue, Jr., in a motor vehicle owned by Mrs. Perdue, and that he had made "payment for such transportation." The effect of the plaintiff's complaint was to remove the plaintiff from the status of a guest within the meaning of the Florida Guest Statute, § 320.59, Florida Statutes, F.S.A. and to claim damages for injuries suffered as a result of the negligence of the defendants, thereby avoiding the necessity to plead and prove gross negligence or wilfull and wanton misconduct. Pursuant to jury verdict, plaintiff recovered a judgment against the defendants in the amount of $30,000.00.
Appellants first contend that the evidence was insufficient, as a matter of *841 law, to remove the plaintiff from the requirements of that section, in that there was no "payment for transportation." The plaintiff testified that he arrived at the Tampa Airport late in the evening en route to Sarasota. His plane was late, and he missed his scheduled flight to Sarasota. He then inquired as to other transportation and the fare to Sarasota and found the amount to be in excess of that which he desired to pay. While explaining his plight to the bartender in the airport restaurant, he met the defendant, William O. Perdue, Jr., who had driven from Sarasota in his mother's automobile to the Tampa Airport, intending to return to Sarasota that evening. The plaintiff explained his plight to Perdue and then told Perdue that he would give him $10.00 to take him to Sarasota. Perdue accepted, and they began the journey to Sarasota. En route, the driver of the automobile drove over a severe dip in the road, causing injury to the plaintiff. They then stopped at a gasoline station where the plaintiff gave Perdue $10.00, stating, "I might as well pay you now." Perdue took the money, purchased gasoline, kept the remainder of the money, and the parties proceeded on to Sarasota where Perdue delivered the plaintiff to his exact destination in Sarasota. Perdue's testimony is in substantial accord with that of the plaintiff, except for these variances: He did not remember discussing any agreed price for the transportation, and Perdue states that prior to leaving the airport, he told the plaintiff that he never accepted money for transportation in his car and that when they stopped at the filling station, the plaintiff offered him a five-dollar bill, stating that he wanted to pay for some gas, and that he accepted the $5.00, paid for the gasoline, took the change, and put it in his pocket.
On these facts, the court submitted the cause to the jury on the plaintiff's allegations of simple negligence. The defendants contend that these facts are insufficient, as a matter of law, to prove "payment for such transportation" and, therefore, plaintiff's cause of action, if any, was limited to gross negligence or wilfull and wanton misconduct under the provisions of § 320.59, Florida Statutes, F.S.A. The latter was admittedly neither alleged nor proven. We hold that these facts were sufficient to submit the issue to the jury. The plaintiff's testimony was sufficient for the jury to find that from its inception, the agreement between these parties was a contractual relationship for transportation of the plaintiff, by the defendant, on a definite proposal made and accepted for the furnishing of this transportation for a price. Those facts distinguish this case from the cases of McDougald v. Couey, 1942, 150 Fla. 748, 9 So.2d 187, and Yokom v. Rodriguez, Fla. 1949, 41 So.2d 446. This journey was not for the purposes of companionship, pleasure, social amenities, hospitality, and the like, as in Sullivan v. Stock, Fla.App. 1957, 98 So.2d 507, and it was not a share expense trip as in Minnick v. Keene, Fla.App. 1962, 139 So.2d 172. The parties here were total strangers. The facts here are to similar effect as those in Katz v. Ross, C.C.A. 3rd 1954, 216 F.2d 880, and are more positive, as to payment for transportation, than those in Wagnon v. Patterson, 1954, 206 Ala. 297, 70 So.2d 244. The latter contains an extensive review of the law on that subject.
Appellants next contend that the court erred in allowing counsel for the plaintiff, after objection made and overruled, in the course of argument to the jury to place upon a blackboard figures representing a mathematical computation, reducing pain and suffering to a calculation in money on a per diem basis, and to argue damages for pain and suffering on a per diem basis. We consider this question in the light of the evidence in the record, noting that the plaintiff testified that he had pain at all times and that there was never, at any time, a period during which he did not feel pain. There was also evidence to the effect that plaintiff's injury was permanent.
*842 A brief portion of plaintiff's counsel's closing argument on the subject of that objection is as follows:
"Gentlemen, you are probably saying what are we here for? How much money are we asking for? Gentlemen, you know there is no way to measure pain in dollars. It's like trying to play God to figure out how much is an hour's pain worth. I cannot tell you how much pain is worth. The law in this case is and the Judge will instruct you I'm sure, that pain and suffering is to be judged by the enlightened conscience of a jury. I can only suggest or give you guides to one way that you may want to use to arrive at what Mr. Watson's damages are. You are certainly not bound by what I tell you. This is merely a suggestion. One way you may think about it  suppose we have a nagging tooth ache? It really hurts. It hurts you for six hours. It hurts you for a whole day. How much would you pay for a shot of an anesthetic to stop your tooth from hurting? Now, I don't know if that is a fair way to measure your pain and suffering or not but I suggest to you that is one way. You want to get that pain over with."
After the above, counsel proceeded to refer to the life expectancy of the plaintiff and then to mention that instead of having the tooth ache referred to over with today, and instead of being relieved of his pain by a shot today, the plaintiff was going to have pain throughout the day for the remainder of his life expectancy. Counsel then computed the life expectancy into the total number of days and then counsel said:
"Now, we come to the more difficult thing. It is easy to figure out what it cost in dollars and cents because you just add it up but Mr. Watson had the experience of an accident. He had the horrible experience of being thrown up and down in a car twice and the intense pain when that vertebra fractured. It just broke, just like that. I have never had an experience like that. I don't know if I would take anything to have that experience and I don't know how to judge what it feels like except to have it yourself. I have taken an arbitrary figure and I suggest to you that the experience of having an accident like that, you may fix a value at a thousand dollars. You are certainly not bound by that. You may feel that it's worth more, maybe less. Your enlightened conscience as a jury is what decides that."
Counsel then continued by stating that he had taken a very arbitrary figure of $3.00 a day for a definite number of days and with this counsel computed on the blackboard the total number of dollars. The same type of argument was presented with a different amount per day and a different number of days until counsel arrived at a mathematical computation of all of plaintiff's damages for pain and suffering, both past and future. These amounts were then added to the proven medical expenses to arrive at a total sum of money which plaintiff's counsel argued was the plaintiff's damages. Counsel then concluded:
"* * * I do not want to mislead you, gentlemen. I want to repeat that you are not bound to use this method to arrive at a verdict. You can use any method you desire within the Judge's instructions. It's for you yourself to determine the value if you can place a value on human suffering. I want to make it very emphatic, this is my way of figuring it out. You may feel that it's worth more and you are permitted to bring in a verdict for more if you feel that it is. Obviously, you are permitted to bring in a verdict for less if you feel that it is less. The one thing I want to leave with you at this time, gentlemen, is please remember that when you leave here today you can let this case pass from your memory. You can forget about Mr. and Mrs. Perdue, but Mr. Watson will not be permitted to *843 forget because he is going to have that pain in his back for as long as he lives."
At this juncture, we emphasize the fact that the objection made to this argument was confined to the mathematical computation on the blackboard and argument with reference to pain and suffering on the per diem basis. Therefore, the question for our determination is, whether or not it was error to permit plaintiff's counsel in argument to the jury to suggest, as a basis for determination of the amount of damages to be allowed for pain and suffering, that a designated sum may be arrived at by considering a stated figure per day, or other period, multiplied by the life expectancy. This question has been recently considered by many American jurisdictions. It is commonly referred to as the "per diem argument." In numerical count, the greater number of these jurisdictions permit such argument. Most, so permitting, follow and cite as the leading authority the decision of our sister court in Ratner v. Arrington, Fla.App. 1959, 111 So.2d 82, in which it was held that the permissibility of such argument was within the sound judicial discretion of the trial court. The leading authority for those jurisdictions not permitting such argument is Botta v. Brunner, 1958, 26 N.J. 82, 138 A.2d 713, 60 A.L.R.2d 1331. The question is extensively annotated in 60 A.L.R.2d 1347. We deem it unnecessary to repeat the arguments for and against the question since they are set forth extensively in the authorities above cited. We adopt the reasoning and conclusion of our sister court as expressed in Ratner v. Arrington, supra, and hold that there was sufficient evidence in this cause to permit the per diem argument and, therefore, the trial court did not err in overruling defendants' objection to that argument.
We deem it unnecessary to discuss the remainder of appellants' points on appeal. The judgment is affirmed.
Affirmed.
SHANNON, C.J., concurs.
STEPHENSON, GUNTER, Associate Judge (concurring in part and dissenting in part).
I concur in that part of the foregoing opinion which pertains to the question involving the Florida Guest Statute, Section 320.59, Florida Statutes, F.S.A.
I cannot in good conscience agree with that part of the opinion that holds the "per diem argument" permissible as being within the sound judicial discretion of the trial judge. I cannot understand how the suggestion of a mathematical formula for the measure of damages for pain and suffering can be discretionary. Such a rule, in my judgment, cannot best serve the cause of justice and its fair and orderly administration.
I further conclude that the "per diem argument" is improper and that it transgresses several substantive and procedural law principles; that is 1) Pain and suffering cannot be measured forensically or scientifically; 2) Counsel's final summation must be based upon record testimony, yet testimony purporting to assign dollar values to pain and suffering on a unit-of-time basis will not be received in any jurisdiction; 3) There is the danger of illusion of certainty but where there is in fact only speculation; and 4) It will inevitably bring into play the Golden Rule Argument, as it did in this case.
For a recent comprehensive discussion of the subject in addition to the Ratner and Botta cases Supra, see 48 Va.Law Review, 913.
For years, the Courts of Florida have held that a proper instruction to the jury in instructing on measuring damages for pain and suffering is: "That there is no standard by which to measure it except the enlightened conscience of impartial jurors." *844 Toll v. Waters, 1939, 138 Fla. 349, 189 So. 393.
In my opinion, the trial Court erred in overruling the objections to counsel's argument and I would reverse.