**T. O. JOHNSON, Individually and d/b/a Johnson Equipment Company, et al., Appellants,**

**v.**

**Carl COLGLAZIER and Esther Colglazier, Appellees.**

**No. 21722.**

United States Court of Appeals Fifth Circuit.

July 12, 1965.

Rehearing Denied Aug. 10, 1965.

John R. Brown, Circuit Judge, dissented.

John H. Benckenstein, Beaumont, Tex., for appellants.

Tom Alexander, Houston, Tex., Robert L. Mellen, Sr., Robert L. Mellen, Jr., Bedford, Ind., Pearson Grimes, Houston, Tex., Butler, Binion, Rice & Cook, Houston, Tex., of counsel, for appellees.

Jerome Sneed, Jr., Austin, Tex., Houghton Brownlee, Jr., Austin, Tex., of counsel, for amicus curiae.

Before HUTCHESON, BROWN, and FRIENDLY,* Circuit Judges.

* Of the Second Circuit, sitting by Designation.

HUTCHESON, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Eastern District of Texas, Judge Fisher presiding, on jury verdicts awarding damages to the appellees in a suit for personal injuries.

Appellees, Carl Colglazier and his wife, Esther Colglazier, where in an automobile collision in which Carl received a back injury and Esther received fractures of the first lumbar vertebra, a crushed ankle and rib injuries. The jury awarded $24,486.25 to Carl and $46,220.47 to Esther.

Two issues are raised on appeal: (1) whether it was reversible error for the district court to allow the plaintiffs' attorney to use the "unit of time" [1] basis for his argument on the verdict for damages for pain, suffering and mental anguish and to exhibit to the jury large charts showing his computation of those damages, figured on the "unit of time" basis during his summation and also in other respects to transgress the rules governing permissible argument; and (2) whether the verdicts are excessive. Also involved is the question of whether the propriety of the argument in a diversity jurisdiction case, such as this one is, will be determined as a matter of state or federal concern.

In addition to the complained of argument on the "unit of time" basis, in the closing argument to the jury (Rec. pp. 185–6) without any evidence whatever to support the argument and beyond all bounds of propriety, as an appeal to the sympathy of the jury, Mr. Alexander, plaintiffs' counsel, said:

"The law is such, and facts are such, and people are such, that people who are severely hurt and permanently hurt do not always get nearly as much as they are entitled to in their legal damages. The people that benefit from the law are the people who aren't hurt much. * * * When you go to extend it over a

1. See Botta v. Brunner, 26 N.J. 82, 138 A. 2d 713, 60 A.L.R.2d 1331.

lifetime, then the figures look large and they are large, and then is when it is hard for you to set down and say she is entitled to $57,480.00 for her pain and suffering and yet if you broke it into segments, there is not a single segment on here that you wouldn't be able to write as your verdict in five minutes, and agree on."

And further, in complete defiance of law and propriety, Mr. Alexander went on to appeal to the jury for a large verdict in order to prevent a possible mistake, saying:

" * * * cases aren't tried piecemeal. The plaintiffs can't come back into this court and say two years from now, five years from now, 'We have found out now that our pain has gotten a whole lot worse. Can we reopen our case?' There is nothing he can do. Cases are tried and finished, and the law must be that way. As of today you must project both his and her troubles and disabilities over the future. It is your duty to do it, and I'm suggesting a guide for you to do it. * * * "

Thus, in effect, plaintiffs' counsel, taking the case on damages for pain and suffering outside of the legal rule which authorizes the jury to award a reasonable amount for pain and suffering and by wrongfully stating that he is giving the jury a guide on which to "determine legal damages" has not only urged the jury to put themselves into the place of the plaintiffs, in violation of the universal prohibition against golden rule appeal, but has also enlisted the jury in his crusade as a plaintiffs' counsel to have the jury not only aid the plaintiffs

in this case but plaintiffs generally by rendering large and then larger verdicts, a wholly impermissible argument.

Appellants are here insisting that the question of improper argument by counsel and the failure of the trial judge to keep the case within bounds is a matter of trial procedure to be determined by the federal courts for themselves, and also insist that both under Texas law and the best considered state and federal decisions [2] the complained of action of the trial judge in permitting the argument to get out of bounds in the respects claimed, without direction or correction on his part, was reversible error.

We agree that this is so, and that, for the reasons hereafter stated as succinctly and lucidly as may be, the judgment must be reversed and the cause remanded for trial anew and for further and not inconsistent proceedings.

■ It would seem that under the test of Byrd v. Blue Ridge Electric Cooperative, Inc., 356 U.S. 525, 78 S. Ct. 893, 2 L.Ed.2d 953 (1958), as applied by this court in Monarch Ins. Co. of Ohio v. Spach, 281 F.2d 401 (5th Cir. 1960) and also under Maryland Cas. Co. v. Reid, 5 Cir., 76 F.2d 30, the question of the propriety of counsel's argument and the judge's action and non-action with respect thereto is a matter of trial procedure controlled by federal law. This is so because there must be weighed, against possible differences in outcome because of choice of forum, the needs of the federal courts, as an independent system of courts, to follow such procedures as will best enable them to carry out their constitutional duty to fairly and justly hear and adjudicate. Spach recognized as "[a]n important

---

2. Botta v. Brunner, note 1, supra; Affett v. Milwaukee & Suburban Transport Corp. (1960), 11 Wis.2d 604, 106 N.W. 2d 274, 86 A.L.R.2d 227; Armstead v. Holbert (1961) 146 W.Va. 582, 122 S.E. 2d 43; Certified T. V. & Appliance Co. v. Harrington (1959) 201 Va. 109, 109 S.E. 2d 126; Chicago & N.W. Ry. Co. v. Candler (8th Cir. 1922), 283 F. 881, 884, 28 A.L.R. 1174; Crum v. Ward (1961) 146

W.Va. 421, 122 S.E.2d 18; F. W. Woolworth v. Wilson, (5th Cir. 1934), 74 F.2d 439; Sunray Oil Co. v. Allbritton, 5th Cir., 188 F.2d 751, 752; Sunray Oil Co. v. Allbritton, 5th Cir., 187 F.2d 475, 477; Vaughn v. Magee (8th Cir. 1914) 218 F. 630, 631; West Texas Utilities Co. v. Renner (Tex.Com.App.1932) 53 S.W.2d 451.

countervailing policy consideration in the Blue Ridge sense" the purposes of the Federal Rules and the Enabling Act to provide, on matters of practice "an approach to uniformity within the whole federal judicial system".

In Maryland Cas. Co. v. Reid, supra, the nature of jury trials, the obligations of the federal trial judge to keep argument in them within bounds, and the consequences of his failure to do so were carefully examined and fully discussed. There the court, quoting approvingly in note 2 at p. 32 from Patton v. Texas & P. Ry. Co., 179 U.S. 658, 660, 21 S.Ct. 275, 45 L.Ed. 361 [3] went on to say at pages 32 and 33 of 76 F.2d:

> " * * * a common-law jury trial is at last a trial, with its attack and its defense, its action and its suspense, and not a scientific inquiry, which in a leisurely and impersonal way may continue indefinitely until the quest is at an end. Because these things are so of jury trials, it is of the genius of our institutions that they be conducted under the firm and steady guidance of judges as administrators, who, having minds trained and personalities adequate to the task, are held primarily responsible for their just outcome. Because these things are so, in a federal court at least, the conduct of jury trials is largely confided to the District Judge, who is expected to have and exercise trial skill of the highest order, and a wise and just discretion. His chief function, his primary object, is to keep the case within legal bounds by admonitions and rulings from its beginning to its end. He uses the rules of evidence [and of proper argument] as means, not ends, to elicit and confine the case to the best evidence

available in order to bring the truth to light [and to obtain a just verdict thereon]. Trained in the principles and problems of proof, knowing how to value the pertinent, to reject the impertinent, he uses other trial rules to accomplish the same end. Nor does his function as overseer, superintendent, and administrator of the trial end with its ending.

> "At common law and by statute, the federal District Judge is charged with the duty of granting a new trial in a jury case where, in his opinion, it went unjustly and injuriously out of bounds.[3]

> > "3 Section 391, title 28 U.S.C.A. provides: 'All United States courts shall have power to grant new trials, in cases where there has been a trial by jury, for reasons for which new trials have usually been granted in the courts of law. On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or execptions which do not affect the substantial rights of the parties.' (Compare Present Rule 59, F.R.C.P.)

> "This court, as to law cases, is a court of error. We do not retry the case. We review the record made in it for reversible error, error by the judge, in conducting or failing to conduct the trial, which has, by permitting the case to get out of bounds, prejudiced the just result. * * *"

On the precise "unit of time" arguments made here, while there are many cases in point, some holding one way and some another, appellants' strongest federal case is probably Chicago & Northwestern Ry. Co. v. Candler, 283 F. 881 (8th Cir. 1922). After indicating that a

---

3. "[Note] 2 'The judge is primarily responsible for the just outcome of the trial. He is not a mere moderator of a town meeting, submitting questions to the jury for determination, not simply ruling on the admissibility of tesimony, but one who in our jurisprudence stands charged with full responsibility.' Patton v. Texas & P. R. Co., 179 U.S. [658] 660, 21 S.Ct. 275, 276, 45 L.Ed. 361."

424

mathematical computation of loss of future earnings was proper, the Court stated:

"No such process is possible in estimating the amount to be allowed for pain and suffering, or for pain and inconvenience. In the matter of pain, suffering, or inconvenience, no books are kept, no inventories made, no balances struck.

"Neither the plaintiff in the case nor any one else in the world has ever established a standard of value for these ills. The only proof ever received to guide the jury in determining the amount of the allowance they should make is, broadly stated, the nature and extent of the injury, its effect and results. They are instructed to allow a reasonable sum as compensation, and in determining what is reasonable under the evidence to be guided by their observation, experience and sense of fairness and right. At the best the allowance is an estimated sum determined by the intelligence and conscience of the jury, and we are convinced that a jury would be much more likely to return a just verdict, considering the estimated life as one single period, than if it should attempt to reach a verdict by dividing the life into yearly periods, setting down yearly estimates, and then reducing the estimates to their present value. The arbitrariness and artificiality of such a method is so apparent that to require a jury to apply it would we think, be an absurdity."

Against this case, appellees rely strongly on Pennsylvania R. R. Co. v. McKinley, 288 F.2d 262 (6th Cir. 1961) which discussed the unit of time argument, reviewed the many state cases and the few federal cases in point, and refused to choose between the competing rules or to "announce a procedural blueprint to be followed in all future trials." In that case the court stated:

"Control of the conduct of counsel so as to keep it within the limits of legitimate advocacy is primarily the duty and responsibility of the trial judge. We will not find error in his discharge of such duty unless we are persuaded that what he did, or failed to do, in matters within his discretion resulted in a miscarriage of justice or deprived one of the parties litigant of a fair trial. Many of the cases which have dealt with the claimed impropriety of an argument such as was made in this case have held that whether to allow or forbid dealing with damages for pain and suffering in the manner employed by plaintiff's counsel here was a matter within the discretion of the trial judge. * * *"

"There, indeed, may be situations where argument such as was made here could, and should, vitiate a plaintiff's verdict. In this case, the evidence of defendant's liability was strong. * * * The jury's verdict was $150,000. We will not reverse the judgment entered because of the style and content of counsel's argument."

■ The best stated reasons for rejecting the "unit of time" argument and the plaintiffs' arguments as a whole are found in Botta v. Brunner,[4] note 1, supra. The arguments used here were not supported by any evidence because pain and suffering and mental anguish cannot be measured forensically in dollars on a unit of time basis; the amount of damages for physical pain or inconvenience must necessarily be left, without mathematical formula, to the sound discretion of the jury, and there is no mathematical rule by which the equivalent of such injuries

4. See Annotation: "Per diem or similar mathematical basis for fixing damages for pain and suffering." 60 A.L.R.2d 1347 (1958).

See also: "Counsel's use, in trial of personal injury or wrongful death case, of blackboard, chart, diagram or placard, not introduced in evidence, relating to damages." 86 A.L.R.2d 239 (1962).

in money can be legally determined. Chicago & N. W. R. R. Co. v. Candler, (8th Cir. 1922) 283 F. 881. Such arguments create an illusion of certainty in the jury's mind which does not and cannot in fact exist. Here the whole argument used in this case, designed and framed as it was, in effect presents an appeal to the "Golden Rule" or put yourself in plaintiff's shoes, an argument specifically rejected everywhere.

The argument in favor of the "unit of time" argument, that it is proper for counsel in his argument before a jury to suggest answers based upon his view of the evidence and to explain the method by which he reached his conclusion, and that it would seem that suggesting some concrete formula, although it must be admitted to be purely a suggestion, in order to give the jury some basis to arrive at its verdict is preferable to leaving it entirely at sea to fix a damage figure en masse by guesswork, is nothing more than an attempt to mislead the jury by taking it down a back alley.

The evidence as to the elements of damages is discussed in detail in the briefs on their respective contentions that the verdict was, and that it was not, excessive. This point, however, seems to have been urged by appellants primarily to give emphasis to their contention on the error of the "unit of time" argument and on the argument as a whole.

We are of the opinion that, while generous in amount, considering the evidence as a whole, the amount of the verdict is not so excessive per se as to require reversal. We are, however, of the clear opinion that the plaintiffs' argument as a whole transgressed permissible bounds, that the court's silence and non-action in not preventing and rebuking the argument was reversible error, and that because of that conduct the judgment must be reversed because excessive, as induced in part by an argument designed, calculated, and effective to mislead the jury into believing that the determination of a proper award for legal damages for pain and suffering is a matter of precise and accurate determination and not, as it really is, a matter to be left to the jury's determination, uninfluenced by arguments and charts of the kind involved here, which could only be regarded as tending to mislead the jury into believing that there was an accurate "legal" guide or chart to assist and direct them in reaching a large verdict for pain and suffering on considerations which have no proper legal place in the determination.

Reversed and remanded for further and not inconsistent proceedings.

JOHN R. BROWN, Circuit Judge (dissenting):

Holding, as it correctly does, that conduct of the trial and control of the jury argument in a Federal Court is for the Federal Court and not one in which Erie-loosed or Erie-bound, the Judge must trim his sails depending on the nature of the case then being heard, the Court in sweeping terms for all time condemns the so-called unit-of-time argument with or without placard portrayal. I think the practice is neither as earth-shaking as made out, or deserving of this universal condemnation. Worse, it is an abandonment of the very life of Maryland Cas. Co. v. Reid, 5 Cir., 1935, 76 F.2d 30. Authored by one seasoned in the pit followed by the maturing experience of years as a trial Judge firmly in control of all that was occurring and capped now by a third of a century's experience in the more remote vantage point of reviewing the judicial performance of others, Reid epitomizes the adversary trial in the best tradition of the Anglo-American system. A trial is a search for truth. But it is a search for truth as revealed by the content of the record there made and produced primarily by the advocates who are the professional, partisan spokesmen for the partisans. Though conducted with dignity and decorum, with a sense of the majestic importance of law and in an atmosphere free of external intrusions, it is a colossal error to think that drama and emotion are left out of a trial. The

contest, although to many on the outside a trivial or slight affair of small significance, is of crucial importance to the litigants. The parties meet there under these controlled surroundings to do battle, with one coming off as victor, the other vanquished, and failing that, it is at least a prelude for a return engagement. The whole system works as an exercise in persuasion—persuasion to action, manifested in the verdict for or against, guilty or not guilty. Here is the advocate's classic and perhaps highest role whether the object of his importunities is the Judge or, more frequently, a jury. The climax of the trial is almost always the fervent argument of counsel as the awful moment of truth approaches. There are bounds, of course, to what he may say and more particularly the manner in which he says it, but it is a derogation of this famous function to suppose that he must stand there and merely parrot with neither inflection nor gesture what each of the witnesses has said. Although there are some formal limitations upon the extent to which counsel in argument may express his personal opinions, his whole presence there, every word, every gesture, every inflection is to persuade the jury to find the critical issues in his client's favor. What he is obviously doing is telling the jury what he, as the advocate, desires them to do.

In a case on a general charge, one acting for a plaintiff inescapably talks about the general verdict for the plaintiff, and that leads naturally to the question of how much. Counsel may and ought to discuss dollars. We now hold that he can discuss whole dollars only and make no mention of processes through which the jury might go in trying to fix that ultimate figure.

Any such rigid rule for all cases and for all time is a derogation of the capacity of the Federal District Judge to keep the case in bounds, of the capacity of jurors to use a good deal of common sense in weighing the importunities and blandishments of paid orators, and an undue restriction on the tools of effective advocacy.

The Court outlawing the practice for all cases, diversity and federal, embraces what it calls the "best stated reasons" set forth in Botta[5] and summarized in this way: (1) the arguments are not supported by evidence because pain and suffering cannot be measured forensically; (2) the amount of damages for pain must necessarily be left, without mathematical formula, to the sound discretion of the jury as there is no mathematical rule by which the equivalent of such injuries and money can be legally determined; (3) such arguments create an illusion of certainty; (4) a sort of wolf-in-sheep's clothing, it is a disguised "Golden Rule" argument which forbids the jury being told to put themselves in the place of the parties, although most know they do so anyway.

I think none of these criticisms is well founded. This is demonstrated, I think, by comparing this technique with an argument having the same aim and following essentially the same process which, without use of placards, post cards, blackboard script or the specification of a monetary figure for a unit of time, would be quite permissible. It would go somewhat like this.

Counsel for the plaintiff: "If you have found a verdict for the plaintiff on the Court's instructions, you must then fix the amount of damages. From the Court's conference with counsel, we know the Court will charge you that in arriving at damages, you will be guided by this instruction: *What sum of money, if any, if paid now in cash do you find * * * would * * * fairly and reasonably compensate the plaintiff * * * for such injuries and damages as have been directly and proximately caused in the past * * * and will in reasonable probability be * * * caused in the future * * * by reason of such injuries * * * and you shall take into account

5. Botta v. Brunner, 26 N.J. 82, 138 A.2d 713, 60 A.L.R.2d 1331.

such of the following elements of damage * * * as you find are established by a preponderance of the evidence, and none other: First, such physical incapacity as the plaintiff has sustained from the time of the accident to the date of this trial * * * ; Second, such physical incapacity as you find from a preponderance of the evidence the plaintiff will sustain in the future * * * ; Third, such physical pain and mental anguish * * * as you find the plaintiff has sustained from the time of the accident to the date of this trial * * * ; and Fourth, such physical pain and mental anguish the plaintiff will in reasonable probability sustain in the future.* * [6]

"You will see that the Court requires you to put your answer in terms of the 'sum of money' which 'if paid now in cash would fairly and reasonably compensate the plaintiff' for these elements of damage. [Counsel then discusses items First and Second.] This brings us to the Third and Fourth items—physical pain and suffering for two periods of time—from the accident to the date of this trial and from this trial for the future.

"At this point you will observe something very curious. The Judge in his charge will tell you that you must find these things from 'a preponderance of the evidence.' Now you did not hear any evidence from any witness as to the sum of money which would compensate the plaintiff for pain and suffering, or what pain is worth or how it is evaluated in money. Indeed, all counsel will tell you that had anyone offered such proof, the Court would have immediately rejected it. Still, you have the duty under the charge to translate your decision in terms of dollars. Your task is to find the sum of dollars that 'would fairly and reason-ably compensate' the plaintiff for this pain and suffering and in the past and in the future. With no evidence heard on it and no evidence admissible on it, how are you going to do your job?

"Well, isn't it a matter of common sense that you have to know two things? First, what is the severity and nature of this pain? And second, what is its duration? How long has it continued? How long will it last? When it comes to duration, you will have to fix this in your own mind in the same terms in which other ordinary people measure time. You need not, of course, fix it precisely to the day, but is this pain going to be permanent? If so, how long will the plaintiff likely live? You heard evidence on life expectancy and you could fix that number of years in your own thinking. But permanent pain does not occur by years. Pain always occurs in the present, not the past or the future. If you find that the pain will likely be permanent, you are finding that it will occur probably each day of the plaintiff's life, and certainly during waking hours of consciousness. Well, just how long is this time? It is easy to say eight, or ten, or eleven years. But what is happening in this period? Months are going by to make up the years. Weeks are going by to make up the months. Days are going by to make up the weeks, and hours—waking hours—are going by to make up the days.

"Now the law does not permit me to tell you in terms of cents or dollars my idea of how much each minute, or hour, or day, or week, or month, or year this pain is worth. But you have the task of finding some specific total amount in fixing that lump sum amount. Do you think you could do it 'fairly and reasonably' without

---

6. The portion from * to ** is the actual charge the Court gave in this case (R. 206–207).

considering the time involved? Will you not have to take into account the hours and days and weeks and months and years ahead? Keep this in mind as you write in the lump sum dollar figure."

In opposing the sweeping condemnation by this Court of the unit-of-time argument, I would not minimize its probable effectiveness. But rules ought to rest on something more than verbalisms. Except for its likely greater effectiveness, each of the criticisms summarized above from Botta may be leveled at the contrary practice. Thus in nearly all jurisdictions it is permissible for counsel to state the lump sum he thinks the jury should allow. Of course that argument is "(1) not supported by evidence." There is no more, no less, proof for a lump sum than for the unit. Likewise, although there is no "formulae" when the jury may be told what lump sum to allow, the process employed is one in which "(2) * * * the equivalent of such injuries [pain] and money can be legally determined." Similarly, to suggest a fixed lump sum is not "(3) * * * an illusion of certainty." It *is* certainty. And so far as the "Golden Rule" is concerned, there is no more suggestion that

jurors put themselves in the plaintiff's position when reaching a final lump sum by a unit-of-time process than by the outright demand for a like large sum. Of course, under either practice if the forbidden appeal is made, the error will be rebuked, but not because of unit-of-time. In addition to these criticisms, it is also sometimes urged that unit-of-time invades the province of the jury and constitutes nonsworn testimony by the lawyer. Under each practice the purpose of counsel's argument is to move the jury to a final lump sum figure. It is the province of the jury to fix that figure. But it is the province of counsel to state either what the figure ought to be, or other factors which legitimately would enable the jury to fix a specified or general figure. And to state a unit-of-time breakdown is no more giving testimony than is the permissible naming of the lump sum.

None of these nominal reasons is really a reason against the practice. The real reason, as one discerns from the opinions of the Courts for bidding unit-of-time,[7] is the fear that it is too effective, and verdicts will be too large. But as pointed out by the Courts who do allow unit-of-time [8] and as reflected in much of the

7. *Illinois:* Caley v. Manicke, 1962, 24 Ill. 2d 390, 182 N.E.2d 206; Jensen v. Elgin, Joliet & Eastern Ry. Co., 1962, 24 Ill.2d 383, 182 N.E.2d 211, 94 A.L.R.2d 904;
*Kansas:* Caylor v. Atchison, Topeka & Santa Fe Ry. Co., 1962, 190 Kan. 261, 374 P.2d 53;
*Minnesota:* Ahlstrom v. Minneapolis, St. Paul & S.S.M.R. Co., 1955, 244 Minn. 1, 68 N.W.2d 873;
*Missouri:* Faught v. Washam, Mo., 1959, 329 S.W.2d 588;
*North Dakota:* King v. Railway Express Agency, Inc., N.D., 1961, 107 N.W.2d 509;
*New Hampshire:* Chamberlain v. Palmer Lumber, Inc., 1962, 104 N.H. 221, 183 A. 2d 906; Duguay v. Gelinas, 1962, 104 N. H. 182, 182 A.2d 451; Plume v. Couillard, 1962, 104 N.H. 267, 184 A.2d 452;
*New Jersey:* Botta v. Brunner, 1958, 26 N.J. 82, 138 A.2d 713, 60 A.L.R.2d 1331; Cross v. Robert E. Lamb, Inc., 1960, 60 N.J.Super. 53, 158 A.2d 359;
*South Carolina:* Harper v. Bolton, 1962, 239 S.C. 541, 124 S.E.2d 54;

*Texas:* Cf. West Texas Utilities Co. v. Renner, Tex.Com.App., 1932, 53 S.W.2d 451. Some assert this is contrary to Texas Court of Civil Appeals approach, decisions in note 8, infra;
*Virginia:* Certified T.V. & Appliance Co. v. Harrington, 1959, 201 Va. 109, 109 S. E.2d 126;
*West Virginia:* Crum v. Ward, 1961, 146 W.Va. 421, 122 S.E.2d 18; Armstead v. Holbert, 1961, 146 W.Va. 582, 122 S.E.2d 43;
*Wisconsin:* Affett v. Milwaukee & Suburban Transp. Corp., 1960, 11 Wis.2d 604, 106 N.W.2d 274, 86 A.L.R.2d 227.

8. *Alabama:* McLaney v. Turner, 1958, 267 Ala. 588, 104 So.2d 315;
*Arkansas:* Vanlandingham v. Gartman, 1963, 236 Ark. 504, 367 S.W.2d 111;
*California:* Seffert v. Los Angeles Transit Lines, 1961, 56 Cal.2d 498, 15 Cal. Rptr. 161, 364 P.2d 337;
*Colorado:* Newbury v. Vogel, 1963, 151 Colo. 520, 379 P.2d 811;

literature,[9] if the evil feared is excessive verdicts, then the cure ought to be directed against the product, not the practice.[10]

That a forensic technique is effective is hardly grounds for prohibiting it. The real hazard arises, of course, from the fact that the standard for damages for pain and suffering is unavoidably vague. But so long as the law tolerates the jury measuring what Botta and all the other anti cases regard as monetarily immeasurable, it is counsel's right—indeed duty—to employ all honorable appeals to persuasive action.

There are many safeguards and more may be contrived. There is, first, the power and duty of the trial Judge. He has an unlimited arsenal. Thus he may, as plaintiff's counsel here did on his own, insist that counsel inform Court and

*District of Columbia:* Evening Star Newspaper Co. v. Gray, D.C.Mun.Ct.App., 1962, 179 A.2d 377;
*Delaware:* Bowers v. Pennsylvania R. Co., D.C.Del., 1960, 182 F.Supp. 756, aff'd, 3 Cir., 281 F.2d 953;
*Florida:* Perdue v. Watson, Fla.App., 1962, 144 So.2d 840; Payne v. Alvarez, Fla.App., 1963, 156 So.2d 659;
*Indiana:* Evansville City Coach Lines, Inc. v. Atherton, 1962, 133 Ind.App. 304, 179 N.E.2d 293; Southern Indiana Gas & Elec. Co. v. Bone, Ind.App., 1962, 180 N.E.2d 375;
*Iowa:* Corkery v. Greenberg, 1962, 253 Iowa 846, 114 N.W.2d 327;
*Kentucky:* Louisville & N. R. Co. v. Mattingly, Ky.App., 1960, 339 S.W.2d 155;
*Louisiana:* Little v. Hughes, La.App., 1961, 136 So.2d 448;
*Maryland:* Harper v. Higgs, 1961, 225 Md. 24, 169 A.2d 661; Eastern Shore Pub. Service Co. v. Corbett, 1962, 227 Md. 411, 177 A.2d 701, affirmed on rehearing, 180 A.2d 681; Lebow v. Reichel, 1963, 231 Md. 421, 190 A.2d 642;
*Minnesota:* Boutang v. Twin City Motor Bus Co., 1956, 248 Minn. 240, 80 N.W.2d 30; Flaherty v. Minneapolis & St. Louis R. Co., 1958, 251 Minn. 345, 87 N.W.2d 633;

*Michigan:* Yates v. Wenk, 1961, 363 Mich. 311, 109 N.W.2d 828;
*Mississippi:* Four-County Elec. Power Ass'n v. Clardy, 1954, 221 Miss. 403, 73 So.2d 144, 44 A.L.R.2d 1191; Index Drilling, Inc. v. Williams, 1962, 242 Miss. 775, 137 So.2d 525;
*Missouri:* Goldstein v. Fendelman, Mo., 1960, 336 S.W.2d 661;
*Nevada:* Johnson v. Brown, 1959, 75 Nev. 437, 345 P.2d 754;

*Ohio:* Penn. R.R. Co. v. McKinley, 6 Cir., 1961, 288 F.2d 262; Hall v. Booth, Ohio App., 1961, 178 N.E.2d 619; Boop v. Baltimore & Ohio R. Co., 1963, 118 Ohio App. 171, 193 N.E.2d 714;
*Oregon:* Hoyle v. Van Horn, 1963, 236 Or. 205, 387 P.2d 985;
*Texas:* J. D. Wright & Son Truck Line v. Chandler, Tex.Civ.App. writ ref'd n.r.e.,

1950, 231 S.W.2d 786; Louisiana & Arkansas R. Co. v. Mullins, Tex.Civ.App. writ ref'd n.r.e., 1959, 326 S.W.2d 263; Texas & N.O.R. v. Flowers, Tex.Civ.App., 1960, 336 S.W.2d 907; Hernandez v. Baucum, Tex.Civ.App., writ ref'd n.r.e., 1961, 344 S.W.2d 498; Chemical Express v. Cole, Tex.Civ.App., writ ref'd n.r.e., 1961, 342 S.W.2d 773;
*Utah:* Olsen v. Preferred Risk Mut. Ins. Co., 1960, 11 Utah 2d 23, 354 P.2d 575;
*Washington:* Jones v. Hogan, 1960, 56 Wash.2d 23, 351 P.2d 153.

9. Comment, 22 La.L.Rev. 461 (1962); Comment, 60 Mich.L.Rev. 612 (1962); Comment, 14 U.Fla.L.Rev. 189 (1961); Comment, 11 Clev-Mar L.Rev. 495 ( ); Comment, 39 N.D.L.Rev. 495 (1963); Comment, 15 U.Miami L.Rev. 85 (1960); Comment, 1960 Wash.U.L.Q. 302; Comment, 1959 Ins.L.J. 699; Comment, 9 N.Y.L.F. 533 (1963); 17 Ark.L. Rev. 94 (1963); 1962 U.Ill.L.F. 269; 36 Temp.L.Q. 98 (1962); 11 Kan.L.Rev. 170 ( ); 41 B.U.L.Rev. 432 (1961); 38 Chi.-Kent L.Rev. 62 ( ); 23 Ohio S. L.J. 573 (1962); 10 Kan.L.Rev. 93 (1961); 45 Marq.L.Rev. 289 (1961); 62 W.Va.L.Rev. 402 (1960); 38 N.C.L.Rev. 289 (1960); 12 Rutgers L.Rev. 522 (1958); 36 Dicta 373 (1959); 33 So. Calif.L.Rev. 214 (1959); 19 Ohio S.L.J. 780 (1958); 43 Minn.L.Rev. 832 (1959); 11 Ala.L.Rev. 207 (1958); 1962 Duke L. J. 334; 1964 Ins.L.J. 264; 49 Ky.L.J. 592 (1961); 64 W.Va.L.Rev. 454 (1962); 4 Ariz.L.Rev. 312 ( ); 14 S.C.L.Q. 442 (1962); 16 Okl.L.Rev. 468 (1963).

10. Here the Court expressly rejects the claim that damages were excessive. And properly so, in view of serious permanent injuries to Mr. Colglazier, then 78, and the more serious injuries to his wife, then about 65 with a life expectancy of 15 to 17 years. Hers included compressed fracture of the first lumbar, injury to rib cage, fracture of ankle with considerable fragmentation aggravating pre-existing arthritis and complicated further by pre-existing osteoporosis—demineralization of the bones.

opposing counsel in advance of argument when unit-of-time is planned. As it is generally used with charts, their form and content should be scrutinized to avoid false factual impressions. The Court in its charge can also make clear that the unit-of-time subsidiary elements are counsel's ideas and not evidence. And to assure effective complete policing, the Court can construct the charge, either general or on special interrogatories, so that each element is separately fixed.[11] The Judge can readily tell whether the verdict is measurably infected on this element by an extravagant runaway jury.

Next, there is the good sense of juries.[12] This record is dramatic proof that this ancient institution has sufficient strength and intrinsic stability, rectitude and judgment to withstand the blandishments of counsel.[13]

And finally—but certainly not least—despite the clamor in professional propaganda emanating from the armed camp of the pursued that unless this tortious tool is outlawed the awful day of judgment is at hand, the most effective safeguard is the defending counsel himself. The marvel of our adversary system—the tit for tat, the Big Roland for a Little Oliver—is that to the resourceful advocate there is always an answer.[14]

This ruling is unrealistically rigid. It demotes trial Judge and trial lawyer.

I therefore dissent.

11. F.R.Civ.P. 49(a) is ideally suited for this. Here a separate blank would have been left for items First, Second, Third, Fourth, see note 6, supra.

12. The broad experience in this Circuit with the Louisiana Direct Action Statute, L.R.S. 22:655, proved that juries could, and often would, return verdicts for insurance companies sued as vicarious defendants.

13. For the plaintiff Mrs. Esther Colglazier, the placard figures for loss of earn-

ing capacity, past and future, physical pain, mental anguish, past and future, and future medical expenses totaled $180,-536.67. The jury verdict was for $46,-220.46.

14. Such stalwarts as Josh Groce, James E. Clark, Bibb Allen, Paul Brock, long openly and proudly identified with the defense and its organized resistance have not yet thrown in the sponge. See, "The TV * * * Answer To * * * Blackboard Build Up Of Damages," Alabama Defense Lawyers Journal, April 1965, p. 59.